THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*. WILLIE E. HUTCHINS, Defendant-Appellant.

(No. 56803;

First District—December 19, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Saul Brauner, Ronald P. Katz, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant At-

torney General, and Robert A. Novelle and James E. Sternik, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal unfolds a phenomenon of our times: the inexplicable, reasonless street killing of one teenage lad by another. In this case, defendant was charged with murder, a jury convicted him and the court sentenced him to imprisonment for 30 to 60 years.

The event, a tragedy for all concerned, occurred at about 7:00 P.M. on May 6, 1969 near an alley in the vicinity of South Ada Street and West 71st Place, Chicago. Janice Sparks, Ronald Murphy, Edward Cooper, Larry Haney, all teenagers, were going home from an afterschool baseball game in a nearby playground. At or near the alley, a boy ran past Haney and toward Ronald Murphy. Haney heard some shots. He turned and saw the boy firing a gun at Murphy. Two other boys joined the first one. More shots were heard. Janice Sparks turned, looked and saw a boy with a gun in his hand. She knew the boy, having seen him 15 or 20 times before. He lived in her neighborhood and had been in her home visiting her brother, Jerry. Janice did not know the boy's real name. She knew him by the nickname, "Turk." She saw the boy shoot Ronald Murphy. Murphy was wounded in the back and died almost immediately. Just before the shooting, Janice Sparks heard "Turk" and the boys with him yell, "Mad Lads!" The police arrived a short time later and Janice gave them her name and address. The next day she told police officers that it was "Turk" who shot Ronald Murphy. Although she could not give them "Turk's" name, her brother suggested that a neighbor, Willie Pate, possibly knew it because Pate and "Turk" had attended the same high school. From this information, the investigating officers learned that defendant was the boy who was known to Janice Sparks as "Turk."

This discovery also disclosed to the officers that on May 4, 1969 defendant had run away from home. His mother, Mrs. Evonn Hutchins, had reported this fact to the police. On May 8, 1969, two officers, one then investigating the shooting of Ronald Murphy, went to Mrs. Hutchins' home and asked if she had a photograph of her son. The officers did not tell her that defendant was wanted for murder. Mrs. Hutchins gave the officers a class group photograph that had a circle around the head of a boy who, Mrs. Hutchins told the officers, was her son. Using this photograph, the officers went to Janice Sparks and showed it to her. She told them that "Turk" was the boy whose head was encircled in the photograph. Defendant was then arrested and taken to the police station. A short time later, Janice was brought to the station. She saw defendant

and told the police that he was "Turk." Defendant was indicted and charged with the murder of Ronald Murphy.

Prior to his trial, defendant filed a motion to suppress the identification testimony of witnesses for the State on the ground that his pre-indictment confrontation with them violated his constitutional rights. After hearing supportive evidence, the trial court overruled the motion. The cause then went to trial before a jury which, over objections, heard the testimony of a Chicago Police Department Youth Officer that on July 24, 1967 he had a conversation with defendant in which he said his nickname was "Turkey" and that he was a "Mad Lad." After hearing the evidence and receiving its instructions, the jury returned a verdict finding defendant guilty of the murder of Ronald Murphy.

Urging that his conviction be reversed, defendant presents three issues. I. Whether the trial court erred in denying his motion to suppress the in-court identification testimony of witnesses for the State. II. Whether the trial court erred in allowing a Chicago Police Department Youth Officer to testify, over objections, that he had a conversation with defendant in July 1967. III. Whether the sentence imposed by the trial court is excessive.

## I.

The record discloses that Janice Sparks was the only witness who, in court, identified defendant as the boy who shot Ronald Murphy on May 6, 1969. Janice Sparks' testimony was clear, certain and convincing. It showed she knew the defendant, saw him shooting Murphy and recognized him when she looked at his face. When he testified in support of his motion, defendant admitted that he had known Janice Sparks for about a year and a half, the period they attended school together. In fact, defendant volunteered the information that he saw Janice almost every weekend during that time. It appears, then, that this important witness knew the defendant, had an adequate opportunity to see him and had the occasion to observe and recognize him. Therefore, her in-court identification testimony was based on a source separate and apart from any identification procedure conducted by the police.

■■ This being so, the issue is resolved by the principle that legal or constitutional questions do not arise when one suspected of a crime is identified by a person who has previously known him and the in-court identification is independent of and uninfluenced by any pretrial confrontation. (See *People v. Robinson*, 42 Ill.2d 371, 247 N.E.2d 898; compare *People v. Davis*, 45 Ill.2d 514, 261 N.E.2d 314; *United States ex rel. Phipps v. Follette* (2 Cir. 1970), 428 F.2d 912; *People v. Hudson*, 46 Ill.2d 177, 263 N.E.2d 473.) We conclude that the trial court did not err in denying defendant's motion to suppress the in-court identification

testimony of witnesses for the State. *People v. True,* 133 Ill.App.2d 156, 273 N.E.2d 24; compare *People v. Watkins,* 46 Ill.2d 273, 263 N.E.2d 115.

## II.

At the trial, the assistant State's Attorney, out of the jury's presence, told the court that he was going to call Chicago Police Department Youth Officer Thomas Jackson, as the State's last witness, to testify concerning a conversation he had with defendant, then 14 years old, on July 24, 1967 in a Chicago police station. Defendant's counsel moved to suppress the testimony on the ground that it had taken place almost two years before the shooting of Ronald Murphy and because defendant had not been advised of his constitutional rights when he answered questions asked by Officer Jackson. After hearing evidence and finding that defendant's constitutional rights had been respected, the trial judge overruled the motion. Then, before the jury, Officer Jackson testified concerning the conversation. Jackson said that on July 24, 1967, in his capacity as a youth officer, he asked defendant about nicknames and defendant told him his was "Turkey." He asked defendant about gang affiliations and he said he was a "Mad Lad." Officer Jackson testified that he knew of a street gang, a branch of the Englewood Disciples, known as the "Mad Lads."

Defendant argues that the testimony of Officer Jackson was prejudicial to his rights and irrelevant to any issue in the case because the conversation about which he testified occurred almost two years before the shooting of Ronald Murphy. Moreover, defendant argues, Officer Jackson's testimony violated the Juvenile Court Act which provides, in part, that "[n]either the fact that a minor has been the subject of proceedings under this Act nor any confession, admission or statement made by him to the court or to any officer thereof before his 18th birthday is inadmissible as evidence against him of his interests in any other court or proceeding * * *." Ill. Rev. Stat. 1967, ch. 37, par. 702—9(1).

■■ Officer Thomas Jackson was a Chicago policeman. He was not an officer of the juvenile court. (See *People v. Hester,* 39 Ill.2d 489, 237 N.E.2d 466.) Therefore, admission of his testimony concerning admissions or statements made by defendant when he was 14 years old did not violate any section of the Juvenile Court Act. Compare *People v. Zepeda,* 47 Ill.2d 23, 265 N.E.2d 647.

The relevancy of Officer Jackson's testimony requires recall of the evidence furnished by Janice Sparks. She testified that she knew defendant by a nickname, "Turk" and that before Ronald Murphy was shot, "Turk" and the boys with him shouted "Mad Lads." Therefore, among the material facts in issue were whether defendant had a nickname "Turk" and whether he belonged to a gang of boys known as the "Mad Lads."

■■ Generally, evidence that tends to prove any material fact in issue is relevant. (*People v. Ciucci,* 8 Ill.2d 619, 625, 137 N.E.2d 40; 4 Callaghan's Illinois Evidence, sec. 5.03 (1964).) Therefore evidence is relevant when it establishes the credibility of a police officer's in-court identification testimony. (*People v. Palmer,* 47 Ill.2d 289, 265 N.E.2d 627.) It is relevant when it proves a defendant's alias so as to connect them with the names under which he is charged. (*People v. Behymer,* 48 Ill.App.2d 218, 198 N.E.2d 729.) It is relevant when it bolsters in-court identification of a defendant as the person who threw rocks at police officers during a civil disturbance. (*People v. Mines,* 132 Ill.App.2d 628, 270 N.E.2d 265.) And in this case, the evidence was relevant when it proved that, before the crime with which he was charged, defendant said his nickname was "Turkey" and he was a "Mad Lad." This evidence bolstered Janice Sparks' testimony; it placed defendant in proximity to time and place of the crime. (See *People v. Wilson,* 46 Ill.2d 376, 263 N.E.2d 856.) For these reasons, the trial court did not err when it denied defendant's motion to suppress the testimony of Officer Jackson.

## III.

After overruling post-trial motions and hearing evidence in mitigation and aggravation, the trial court sentenced defendant to imprisonment for a term of not less than 30 nor more than 60 years. As required by the statute then in force, defendant was committed to the Illinois Youth Commission. The commitment order was the sentence of the court. (See Ill. Rev. Stat. 1967, ch. 38, par. 119—2(c), amended by Act approved September 12, 1968. Laws of 1968, p. 551.) Defendant contends this sentence is severe. He argues that its severity will impede his rehabilitation because when sentenced, he was 16 years of age, a high school student without a prior criminal record who was living with his mother and brothers. For these reasons, defendant urges that we reduce the minimum of his imprisonment term. See Supreme Court Rule 615(b)(4), Ill. Rev. Stat. 1967, ch. 110A, par. 615(b)(4).

■■ It cannot be questioned that defendant's youth, background, lack of prior criminal record and circumstances which suggest his potential for rehabilitation are factors to be considered when we are asked to reduce a sentence. (*People v. Cannon,* 49 Ill.2d 162, 273 N.E.2d 829; *People v. Livingston,* 117 Ill.App.2d 189, 254 N.E.2d 64; *People v. Brown,* 132 Ill.App.2d 302, 270 N.E.2d 501.) These factors are present in this case. Nor can it be questioned that defendant, a juvenile, is entitled to a judicial review of his sentence to determine whether he has been subjected to statutory or constitutional deprivations. *People v. Spears,* 50 Ill.2d 14, 276 N.E.2d 322.

■■■ We observe, however, that the statute under which he was committed provided that the sentence of the trial court "* * * shall not limit the powers of the Youth Commission created by Section 11 of the 'Youth Commission Act' * * *." (Ill. Rev. Stat. 1967, ch. 38, par. 119—2(c), amended by Act approved September 12, 1968. Laws of 1968, p. 551.) By this provision, the legislature meant that notwithstanding the minimum and maximum limits of the imprisonment term imposed by the trial court, the Youth Commission was reserved the power (1) to place defendant in an appropriate institution or facility deemed best for his training and rehabilitation, consistent with the right of the public to be protected; (2) order his release on parole under conditions which the Commission believes conducive to law-abiding conduct, whether or not he has served the minimum term for the crime of which he was convicted; (3) order replacement or renewed parole as often as conditions indicate it to be desirable; (4) revoke or modify any order of the Commission, except an order of discharge, as often as conditions indicate it to be desirable; (5) discharge defendant from its custody and control when the Commission is satisfied that such discharge is consistent with defendant's welfare and the public's protection. (See Ill. Rev. Stat. 1967, ch. 23, par. 2519, as amended, August 20, 1968, Laws of 1968, p. 163.) By this law, the legislature intended to make the imprisonment sentence of a juvenile different from the imprisonment sentence of an adult. To emphasize this fact, the legislature provided that when a youth is committed to the Commission, it had the duty to "* * * forthwith study and examine him and investigate all circumstances of his life and the antecedents of behavior which caused him to be committed * * *." (Ill. Rev. Stat. 1967, ch. 23, par. 2518.) Informed by the results of its examination and study of defendant, enlightened by the opportunity to observe him and influenced by manifestations of defendant's potential for rehabilitation, the Commission can decide what is best for him and the public, consistent with the purposes of the Act which are "* * * to conserve the human resources represented by the youth of the State and to protect society * * * by providing methods * * * directed toward correction and rehabilitation of young persons found * * * guilty of crime * * *." (Ill. Rev. Stat. 1967, ch. 23, par. 2502.) Were we to modify the sentence which the trial court imposed, we would, in this case, interfere with the functioning of the salutary laws which the legislature has adopted to govern the treatment of juveniles who, like defendant, are convicted of crimes. We decline to do so. The judgment is affirmed.

Affirmed.

STAMOS, P. J., and SCHWARTZ, J., concur.