THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD WAYNE JOHN KUNTZ, Defendant-Appellant.

Second District  No. 76-142

Opinion filed September 27, 1977.

Ralph Ruebner, Peter B. Nolte, and Michael M. Mulder, all of State Appellate Defender's Office, of Elgin, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

The defendant, Donald Wayne John Kuntz, age 16, was charged with the murder of Guy Aubuchon, age 6. Due to the age of the defendant, the State petitioned the juvenile court pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702-7(3)) to transfer the case to the adult division of the circuit court. Following a hearing, the petition was granted; thereafter defendant was found guilty by a jury and sentenced to 14 years to 15 years imprisonment.

At trial, Gerald Collins, an eight-year-old playmate of the victim testified that late in the afternoon of April 15, 1975, Guy and he were playing in a dump next to the Wonder Lake fire station searching for spray paint. During the search they separated. Gerald heard Guy cry and started to look for him. He climbed a hill and saw a man dressed in a blue jean jacket and blue jeans with a white tee shirt sticking out from the jacket leaning over Guy and struggling with him. Gerald sought help at this point and returned to the scene with his father. Alfred Collins, Gerald's father, testified that at the request of his son, the two proceeded to the dump where they found Guy. A police car arrived on the scene and later, a rescue squad; the rescue squad transported Guy to McHenry Hospital, where he was pronounced dead at 7:48 p.m.

An autopsy revealed that there were eleven incised wounds on the victim's back as well as an incised wound on the anterior of the neck. Two of the incised wounds punctured the lungs and caused the death. Two photographs, one showing the neck wound and the other showing the wounds to the victim's back were admitted into evidence over the objections of defense counsel.

Mrs. LaFern, mother of the defendant, testified that defendant had returned home at 5:30 p.m. with the left front of his shirt covered with blood. The defendant stated he had found a wounded bird. Upon hearing a radio report of a boy found with his throat cut, she questioned the defendant who told her that Guy was swearing at him, calling him dirty names and that the next thing he remembered was holding Guy in his arms. The defendant's parents thereupon brought the defendant to the police station. The defendant was given his *Miranda* warnings; he repeated the statement he had given his mother to the officers; he was then taken to the scene of the incident where a search for the weapon was being conducted. The defendant eventually directed the officers to the area where the knife was found.

Adam Prushinski and his son, Edmond, who lived next door to each other, testified that while working outside their houses between 5:15 p.m. and 6 p.m. they saw the defendant walking out of a field adjacent to the Edmond Prushinski home. The field where Guy Aubuchon was found was directly northwest of the Kuntz home behind the Prushinski homes.

The defense called two of the defendant's schoolmates to testify concerning various attempts to hypnotize the defendant. Eric Esau testified that he was 17 years old, his father was a psychiatrist, and he had read several books on hypnosis. He testified that prior to April 15, he had attempted to hypnotize the defendant, that the defendant seemed to enter a trance and become hostile. Keith Carr, also 17 years old, testified that he was present at these sessions and that on one occasion the defendant had muttered, "kill, kill," and had lunged at Keith. On direct examination defense counsel asked Eric Esau if he had an opinion, based on his contact with the defendant, as to whether or not the defendant was suffering from a mental disease or defect. The State's objection to the question was sustained.

Dr. Gary Kisler, District Coordinator of Pupil Personnel Services in the defendant's school district, and Susan Carpenter, a school psychologist, testified as to their encounters with the defendant. Both had recommended that the defendant seek psychiatric treatment. Dr. Anthony Pavkovic, a psychiatrist specializing in child and adolescent psychiatry, testified that the defendant had been referred to him some three or four years prior to this incident, but as both the parents and the defendant felt nothing was wrong, no treatment was commenced. On March 8, 1975, the Woodstock school referred the defendant to him and he in turn referred the defendant to the Mental Health Center in McHenry County, Illinois. Following the incident on April 15, Dr. Pavkovic saw the defendant for a total of eight hours. He diagnosed the defendant as a paranoid schizophrenic; he was of the opinion that the defendant did not appreciate the criminality of his act.

In rebuttal, the State called two McHenry County deputy sheriffs who had observed the defendant on April 15, 1975. Henry Nulle testified that in his 21 years as a deputy sheriff he had observed over 200 persons he felt were insane and that, in his opinion, the defendant was sane. Richard Heisler testified that he had been a deputy sheriff for approximately eight years and a juvenile officer for about five and a half years and had transported persons to Elgin State Hospital. Based on his experience, it was his opinion that the defendant was sane. Both opinions were objected to by defense counsel, but the objections were overruled.

The final rebuttal witness for the State was Dr. Werner Tuteur, a psychiatrist who had reviewed the history in reference to defendant's behavior and who examined the defendant on August 15, 1975. It was Dr. Tuteur's opinion, based upon his examination of the defendant, that the defendant was not suffering from any mental disease or defect on April 15, 1975.

On appeal, the defendant contends that three erroneous rulings of the trial court operated to deprive him of a fair trial.

■■ The first alleged error occurred when the trial court allowed the two photographs of the victim to go to the jury. In *People v. Jenko* (1951), 410 Ill. 478, 482, 102 N.E.2d 783, 785, the court stated:

"Evidence having a natural tendency to establish the facts in controversy should be admitted. A party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury. Any testimony concerning the details of a murder or other violent crime may have such tendencies, but manifestly this could not suffice to render it incompetent. Of course, where spectacular exhibits having little probative value are offered for the principal purpose of arousing prejudicial emotions they should be promptly excluded. But questions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant."

In the *Jenko* case the court held that there was no error in admitting into evidence certain photographs taken of the victim's body at the hospital and showing the various wounds inflicted upon her.

■■ The State has a right to prove each and every element of the crime, even though the defendant stipulates to the identity of the deceased and the cause of death. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279; *People v. Puckett* (1972), 6 Ill. App. 3d 206, 285 N.E.2d 258.) No such stipulations were even offered here. While defendant raised the defense of insanity, the defendant's arguments also attempted to cast doubt with regard to whether the defendant performed the acts which resulted in the death of Guy Aubuchon. Further, the photographs helped to clarify the testimony of the medical witnesses as to the wounds inflicted upon Guy and the cause of death.

The photographs here were in black and white, not in color as in *People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121. Here too, the photographs clearly and accurately depicted the wounds which caused death unlike the photographs, in color, admitted into evidence in *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827, which showed the damage done to the victim's body due to the autopsy procedures rather than the injuries to the victim inflicted by the defendant.

■■ We therefore find no abuse of discretion by the trial court in admitting the two photographs of the victim into evidence and permitting them to go to the jury.

The second error claimed was the refusal of the trial court to allow Eric

Esau, a 17-year-old classmate of the defendant, to express his opinion as to the defendant's sanity.

A lay witness may express his opinion of the defendant's sanity, testifying as to facts and circumstances as the basis for the opinion. (*People v. Pruszewski* (1953), 414 Ill. 409, 111 N.E.2d 313; *People v. Patlak* (1936), 363 Ill. 40, 1 N.E.2d 228.) It is within the discretion of the trial court as to whether the witness has testified to sufficient facts and circumstances, and that discretion will not be reversed upon appeal unless an abuse of discretion is shown. *People v. Lechner* (1976), 35 Ill. App. 3d 1033, 342 N.E.2d 820.

■■■ Having reviewed the testimony of the witness, we agree with the trial court that the witness did not have a sufficient background to express such an opinion. Further, we observe that the witness' opinion was sought in terms of whether the defendant was suffering from a mental disease or defect. The question framed in that manner is objectionable, since it asks a lay person to express an opinion requiring a certain level of medical knowledge as opposed to merely seeking a lay witness' opinion as to the defendant's sanity. (*People v. Lechner.*) Moreover, the witness was still permitted to testify to all the incidents which occurred during his contacts with the defendant that might have provided the basis for his opinion as to the defendant's sanity. As the jury had heard the witness' testimony, the absence of the opinion drawn from such testimony is immaterial. *People v. Lechner; People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.

Finally, the defendant contends that the trial court erred in refusing to limit the assistant state's attorney's closing argument to the relevant evidence presented at trial. In his closing argument to the jury the assistant state's attorney stated:

> "Will society be protected if Donald Wayne John Kuntz is separated for a period of three to four years, and then—"

At that point the defense counsel interposed an objection on the grounds that the assistant state's attorney was commenting on the sentencing of the defendant. The assistant state's attorney responded that his statement did not pertain to the sentence, but that it was relevant as the defendant's psychiatrist had testified as to the proposed care and treatment of the defendant if he were found to be insane.

While the prosecutor is not permitted to appeal to the prejudices of the jury he may comment on and draw inferences from the evidence. (*People v. Etten* (1975), 29 Ill. App. 3d 842, 331 N.E.2d 270.) Dr. Anthony Pavkovic, testifying for the defendant, stated that the defendant was in need of intensive psychiatric treatment at an in-patient facility and that the treatment should last for three to four years under a child psychiatrist.

In *People v. Myers* (1966), 35 Ill. 2d 311, 220 N.E.2d 297, the defendant was charged with the murder of a 10-year-old girl and pleaded insanity as a defense. He was found guilty and sentenced to death. On appeal he argued that the closing argument of the prosecutor was improper and prejudicial. In closing, the defense counsel had argued:

> " 'If we can learn one thing that can save one human life by sparing John Myers and placing him in a mental institution then I say it is worth a gamble because he is going to be no problem as long as he is behind bars and we can learn from him fine.' " (35 Ill. 2d 311, 335, 220 N.E.2d 297, 311.)

In reply the prosecutor stated:

> " 'Let us all say that it will do no good to kill John Myers. He says let us take a gamble. Are you going to gamble he goes to the security hospital? Are you going to gamble in a few years he will find no psychiatrist saying that John Myers is psychotic? If the inevitable takes place you have given him the gun and said good boy, John, go out and kill another Carole Ballard.' " (35 Ill. 2d 311, 335, 220 N.E.2d 297, 311.)

The court there found that the prosecutor's argument was a legitimate reply to the defense counsel's argument and further, that the argument was based on the evidence and the reasonable inferences therefrom. There had been testimony that the defendant was sane and the court felt that the jury could conclude that if it should acquit the defendant on the basis of insanity, he would be sent to the security hospital and thereafter released. In *People v. Fox* (1970), 131 Ill. App. 2d 604, 264 N.E.2d 502, the court, citing *Myers* refused to reverse where the prosecutor in closing argument stated that the defendant could be out in the street two days after being put in an institution.

Finally, in *People v. Etten*, the defendant was charged with murdering his wife and he alleged the defense of insanity. The defendant's mother testified that prior to the death of the defendant's wife, her son told her he felt like shooting someone and then shot her in the shoulder; then she said that she had lied to the police about the incident in order to protect the defendant. The prosecutor commented that her testimony may have been motivated by her belief that the defendant could be released from a mental institution in a short time. The defense counsel objected to this argument and initiated a colloquy with the prosecutor regarding the amount of time the defendant could spend in such an institution. The trial court instructed the jury to disregard such argument and comment. On appeal the court recognized that while such statements were better left unsaid, they do not require reversal.

■■ In our view the assistant state's attorney's argument here was based upon the evidence elicited from the testimony of the defendant's

own psychiatrist. The comment complained of was no more inflammatory than in *Myers, Etten,* or *Fox,* nor was the question of the defendant's insanity such a close one in view of all the evidence introduced at trial. We therefore find no reversible error due to the closing argument of the prosecutor.

■■ Lastly, the defendant alleges that while each individual error might not in itself cause a reversal, that cumulatively they are sufficient to require a new trial. Inasmuch as the first two issues, namely, the failure to exclude from evidence the two photographs of the victim and the refusal of the trial court to allow Eric Esau to testify as to his opinion of defendant's sanity, involved no error, even if the assistant state's attorney's comment were held to be error, we would not find it necessary to reverse.

The judgment of the circuit court of McHenry County is affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.