THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LONNIE GREEN, a/k/a Norman Green, Defendant-Appellant.

First District (4th Division)    No. 77-381

Opinion filed November 3, 1977.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and James M. Thunder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Defendant, Lonnie Green, a/k/a Norman Green, was charged in a four-count information with the aggravated battery of two police officers. Two counts charged great bodily harm (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a)), and the other two charged harm to police officers while in the course of their duties (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(6)). After a bench trial defendant was found guilty under one of the counts charging bodily harm to one officer while in the course of his duties, and defendant was sentenced to a term of one year to one year and a day in the Department of Corrections. The court found that the State adduced insufficient evidence as to the other three counts. Defendant contends that he was not proved guilty beyond a reasonable doubt.

We affirm.

Mrs. Mary Lashley testified that she was in the ninth floor apartment of her daughter, Marianne, on December 28, 1975, when Chicago police officers Shannon and Windgard arrived. The record discloses that these uniformed officers were investigating a burglary of the apartment but that this witness had not known their names until the day of the trial. Mrs. Lashley and the two officers proceeded by way of the elevator to the first floor of the building, and when they arrived in the vestibule she observed a crowd of people, including the defendant and her son, Edward. She testified that as they exited the elevator, the officers "were surrounding" the defendant and attempting to place handcuffs on him. The defendant attempted to speak to this witness at that time and made an outward motion with his arm from his chest, knocking Officer Windgard down and across the vestibule. She related that Officer Shannon meanwhile continued his attempt to place defendant in handcuffs, but defendant made another lateral motion with his arm and knocked or pushed Shannon to the floor as well. Defendant then kicked Officer Shannon three or four times about the head area, at which point the officer released his grasp of defendant and the defendant fled from the building. Mrs. Lashley testified that the entire incident occurred quickly, that Officer Windgard went down "right away" and that there was "so much commotion" in the area she was uncertain how far Officer Windgard slid across the vestibule floor. She further related that neither officer had drawn his gun during the incident.

Officer Shannon testified that he, Officer Windgard and Mrs. Lashley proceeded to the first floor to commence a tour of the building after a conversation with Mrs. Lashley in her daughter's apartment. As these three persons exited the elevator, this witness observed Edward Lashley engaged in a scuffle with defendant in the vestibule. He related that he and Windgard moved toward those two men to stop the fight and to speak to defendant. As the witness and his partner stood to either side of defendant and attempted to handcuff him, defendant moved his arm quickly and knocked the witness to the floor and into a hallway some six feet away. At this time Officer Windgard had hold of defendant's other arm and defendant then struck or pushed Windgard with his free arm, knocking Windgard to the floor. Officer Shannon related that defendant proceeded to kick Windgard three or four times about the head and shoulders. But Officer Shannon expressly denied that defendant kicked him. Officer Shannon claimed that neither he nor Officer Windgard drew his gun during the incident, and he acknowledged that the police report authored by him failed to recite that he had been knocked down by defendant during the incident.

Officer Windgard substantially corroborated Officer Shannon's testimony regarding the events leading to and including the officers'

intervention in the scuffle. This officer further testified that defendant was told the officers wished to speak to him concerning a burglary, and defendant initially was cooperative. As Officer Shannon held one of defendant's arms to handcuff him, defendant said something to Edward Lashley concerning not going to jail on his account, spun around and threw Officer Shannon into a hallway. This witness had taken hold of defendant's other arm and was struck in the face by defendant and knocked to the floor. He testified that he continued to hold defendant's sleeve, but that defendant then kicked him in the head three or four times and ran off. The officer related that he pursued defendant outside the building and fired four shots at defendant as he fled. Officer Windgard received treatment at a hospital for scratches and bruises on his head, and was X-rayed as well. He filed no complaint against defendant for resisting arrest.

The record further discloses that the two police officers and defendant all were six feet or taller in height and that all weighed more than 200 pounds.

Defendant testified in his own behalf and denied kicking anyone during the incident. He stated he was speaking to a friend in the vestibule of the building and that Edward Lashley was present. Police officers exited the building elevator, someone mentioned defendant's name, and the police took hold of defendant's arms, stating they wished to speak to him. Defendant claimed that the officers did not tell him they wanted to question him concerning a burglary. However, others in the vestibule had asked him if he knew anything about the burglary. Defendant related one of the officers had been "harassing" him in the past; and, as he was taken by the officers he "pushed out," causing one officer to back away. Defendant then went to speak with Mrs. Lashley and the officers again took hold of him. He again "pushed off," causing one of the officers to back away a few steps. Defendant then began to run from the building but one of the officers still had hold of him at this point. Defendant "snatched away" from this officer and ran from the building as one officer fired four shots at him.

At the close of the evidence and after final argument, the trial court found that defendant's "contact" with Officer Shannon, as it related to both counts of the information involving this officer, was "rather minimal"; and that no evidence of great bodily harm was adduced as to Officer Windgard. The court, however, found defendant guilty of aggravated battery under the count of the information charging bodily harm to Officer Windgard while the officer was in the performance of his official duties. Subsequent to a hearing in aggravation and mitigation, the trial court commented that defendant had a lengthy criminal record but that the instant occurrence was spontaneous on his part and without substantial contemplation or planning.

Defendant's contention that he was not proved guilty beyond a reasonable doubt is predicated primarily upon the credibility of the State's witnesses, whose testimony he says was impeached and "largely unlikely and improbable." He details several factors which he claims contributes to a reasonable doubt of guilt. He claims that Mrs. Lashley's testimony that Officer Shannon was kicked contradicted the officers' testimony that Officer Windgard was kicked. He also relies on the testimony of all three State's witnesses that Officer Shannon was knocked to the floor, whereas the latter's police report fails to disclose such fact. And defendant points out the lack of medical corroboration of Officer Windgard's alleged head injuries. Defendant further asserts that the trial court found the testimony of the State's witnesses as to whether Officer Shannon was knocked down by defendant to be "utterly incredible."

■■ Section 12—4(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(6)), provides in pertinent part that a person who, in committing a battery, knows the individual harmed to be a police officer engaged in the execution of his official duties, commits the offense of aggravated battery. The factors which constitute harm under such circumstances are a question for resolution by the trier of fact, as is resolution of any inconsistencies or contradictions in the testimony of the witnesses. *People v. Brown* (1974), 18 Ill. App. 3d 1049, 310 N.E.2d 498.

The discrepancy between Mrs. Lashley's testimony that Officer Shannon was kicked and the officers' testimony that Officer Windgard was kicked could reasonably have been resolved by the trial court, as trier of fact. Mrs. Lashley testified at trial that she did not know the names of the officers until the day of trial and her testimony inferred that she was unable to precisely recall certain aspects of the incident because events occurred so rapidly.

We reject defendant's characterization of the trial court's comments concerning the attack upon Officer Shannon and the alleged great bodily harm inflicted upon Officer Windgard, as being a finding that the testimony of the State's witnesses was "utterly incredible." The trial court stated that defendant's "contact" with Officer Shannon was "rather minimal," which is clearly not a finding that the testimony regarding such contact was "utterly incredible." Moreover, the officer's police report is not contradictory of, but simply inconsistent with the testimony of the State's witnesses, and, as such, a factor to be considered in determining the witness' credibility. And the court simply found that the State failed to adduce sufficient evidence regarding great bodily harm inflicted upon Officer Windgard, based upon the evidence as to the injuries received in the incident.

■■ The failure of the State to support Officer Windgard's testimony concerning those injuries with medical evidence is immaterial. His testimony alone was sufficient to support a finding of bodily harm in a

battery case. See *People v. Brown* (1974), 18 Ill. App. 3d 1049, 310 N.E.2d 498.

We have read and considered the cases cited by defendant in support of his position that his guilt was not sufficiently proved. We find these cases are inapposite to the instant circumstances. See, *e.g., People v. Poltrock* (1974), 18 Ill. App. 3d 847, 310 N.E.2d 770; *People v. Ortiz* (1973), 16 Ill. App. 3d 13, 305 N.E.2d 205; *People v. Carroll* (1970), 119 Ill. App. 2d 314, 256 N.E.2d 153.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

JOHNSON and LINN, JJ., concur.