THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TORY L. RACHEL, Defendant-Appellant.

Second District   No. 83—315

Opinion filed April 11, 1984.—Rehearing denied May 17, 1984.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Tory Lee Rachel, was found guilty of indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(3)), home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(2)) and battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—3). He was sentenced to concurrent terms of six years' imprisonment by the circuit court for indecent liberties and home invasion. Defendant appeals, contending (1) he was not proved guilty beyond a reasonable doubt of home invasion; (2) that the admission in evidence of certain testimony was irrelevant and prejudicial; and (3) that he was denied effective assistance of counsel when his attorney tendered an improper jury instruction which prejudiced defendant.

Evidence adduced at trial disclosed that on July 27, 1982, in the early evening, Suzanne Dowell and Kristin Voska, aged 13 years, were walking home from the beach when a car, later identified as defendant's, came towards them, stopped, then turned around and went back in the other direction. A few minutes later as they were walking, defendant came out of the bushes near the road and followed them. The girls noticed defendant's car parked nearby with the driver's door open; they became frightened and walked faster until they reached the driveway of a house where a man was standing. The girls told the man about the defendant's conduct and continued walking home. While doing so they again saw defendant's car pass them on the road and proceed in the same direction in which they were walking. On their way home, the girls walked past the "Hager" house.

In the Hager house at that time on the same evening the Hager sisters, Hollie, aged 15 years; Heidi, aged 14 years; Valli, aged 11 years; and Heather, aged 8 years, were home alone. Heather and Valli were in a bedroom playing a video game, Hollie was in the kitchen baking and Heidi was sleeping on the living room couch. When Valli and Heather looked up from their game, they noticed defendant looking at them through the bedroom window. He asked them if their father was home and Valli responded that he was not; defendant then asked if their mother was home and Valli responded that she was, but Heather reminded her that she had gone out. Defendant then walked away in the direction of the front door and Valli went to the kitchen to ask Hollie if she expected any callers. All three sisters then heard Heidi scream from the living room and the girls next saw defendant running out of the front door. Defendant got into his car, which had been parked pointing away from the house, and as he drove off he turned around and waved and smiled at the girls.

Heidi Hager testified she had been sleeping on the living room couch when she was awakened by a man who was pulling at the crotch of her shorts and trying to get his hand into them. A pillow was over her face. Heidi got the pillow off of her face and screamed, whereupon her sisters ran into the room and the man ran from the house. Heidi testified that she had struggled with defendant in attempting to get the pillow off of her face so that she could breathe. She was frightened and crying, but freed her face sufficiently so that she could scream. On cross-examination, Heidi testified that she had sustained no scratches, bruises or swelling as a result of the incident and required no medical treatment.

Defendant testified on his own behalf and in explanation for his presence at the Hager home on July 27, 1982, stated that in early June 1982 he had been in the vicinity of the Hager home *en route* to a customer's house and had stopped at the Hager's for directions. A lawn party was then in progress and a girl had given him directions. When defendant informed her he was a car salesman the girl said she was interested in buying a car, but had financial problems.

Defendant testified further that on July 27, 1982, he had spent the day at a sales promotion seminar and that evening was proceeding to the Hager home to see whether he could sell a car. On the way, he saw someone who looked like the girl he had spoken to at the Hagers' in early June and turned down the road towards her. Because he could not tell for sure whether the girl was the same person, he decided to approach her on foot and parked his car around the corner and cut back through a yard walking up near to the girls. He then decided neither of the girls was the person to whom he had spoken previously and returned to his car and drove to the Hagers' home.

At the Hagers', defendant testified no one answered when he knocked on the door. He heard noises in the house and looked into a bedroom window where he saw two young girls playing, and he asked if their parents were home. He was told they were not and that he could talk to a sister. Defendant walked to the partially opened front door, stuck his head in and said "excuse me" a couple of times. He could see someone lying on the couch so he entered the room, walked over to the couch, and placed his hand on the sleeping person's shoulder and hip to shake her in order to wake her up. The sleeper awoke and began to yell and scream, frightening defendant who then hurried out the door to his car. Before driving away he shrugged and waved goodbye to two girls he saw looking out of the house after him. Defendant testified he did not put his hands in Heidi's pants or try to remove them nor did he intend to arouse his sexual desires or injure

the girl.

In the conference on instructions the State tendered an instruction based upon Illinois Pattern Jury Instruction (IPI), Criminal, No. 2.01 (2d ed. 1981), stating that the offense of home invasion includes the offense of battery and instructions defining the offense when committed by one who causes bodily harm to another (Ill. Rev. Stat. 1981, ch. 38, par. 12—3(a)(1)). Defendant's counsel also tendered instructions as to battery based upon having physical contact of an insulting or provoking nature with another (Ill. Rev. Stat. 1981, ch. 38, par. 12—3(a)(2)). These instructions were given to the jury and general verdict forms for the offense of battery were submitted to it.

■ Defendant contends first that the evidence was insufficient to establish he caused injury to the complainant and that necessary element of the offense of home invasion was thus lacking.

The home invasion statute provides, *inter alia*, as follows:

> "(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and \*\*\*
>
> (2) Intentionally causes any injury to any person or persons within such dwelling place." (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(2).)

Defendant asserts that since Heidi Hager was not bruised, scratched or swollen because of defendant's assault upon her, she was not injured.

It is true that the girl was not treated for any injury and there were no marks left on her body. An officer who interviewed her two hours after the incident stated she was shaking and crying at that time, but mentioned no injury which he had observed. The only evidence relating to possible injury to the girl was her testimony defendant held a pillow against her face and pushed her back into the couch. She stated it was then difficult to breathe and she struggled to free herself from the constraints of the pillow in order to scream.

The question of what constitutes "any injury" for purposes of the home-invasion statute has not been directly considered by our reviewing courts. In *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 1112, 412 N.E.2d 721, *appeal denied* (1981), 82 Ill. 2d 585, the court considered whether the offense of battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—11(a)(1)), in which defendant had been charged with causing bodily harm, was a lesser-included offense of home invasion so as to preclude defendant's convictions of both offenses. The court noted that to com-

mit home invasion in that case defendant had to have caused "injury" to a person to be within the statute, while the battery statute speaks of "bodily harm." It found that while injury and bodily harm were not identical terms, "that to cause an injury within the meaning of the home-invasion statute, one must cause bodily harm, thus committing a battery. Thus, whenever a person violates the home-invasion statute, he simultaneously commits a battery." The court concluded in *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 412 N.E.2d 721, that battery was a lesser-included offense of home invasion and thus barred as a multiple conviction for the same conduct under the principles of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

In *People v. Foster* (1982), 103 Ill. App. 3d 372, 377, 431 N.E.2d 430, this court noted *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 412 N.E.2d 721, had held that to cause injury within the meaning of the home-invasion statute one must cause bodily harm, thus committing a battery. This court also noted, however, that evidence of visible injury to the victim is not necessary in order for a battery to have occurred. (*People v. Choate* (1979), 71 Ill. App. 3d 267, 276, 389 N.E.2d 670; see *People v. Hamilton* (1980), 81 Ill. App. 3d 297, 401 N.E.2d 318, *appeal denied* (1980), 81 Ill. 2d 595; *People v. Taylor* (1977), 53 Ill. App. 3d 810, 815, 368 N.E.2d 950.) In *People v. Foster* (1982), 103 Ill. App. 3d 372, 431 N.E.2d 430, evidence was presented that defendant entered the victim's residence and pushed her down into a chair with his hand around her throat while she struggled with him; it held that "clearly this contact caused injury, thus it was sufficient to sustain defendant's conviction under the home invasion statute."

We consider defendant's similar conduct in the present case, wherein he held a pillow over the child's face preventing her from breathing properly, was also sufficient to cause injury within the context of the home invasion statute and the lack of visible evidence of injury to the victim does not negate injury to her.

Defendant next contends that the testimony of Suzanne Dowell and Kristin Voska that defendant had followed and approached them on the street shortly before the incident at the Hager home was not relevant to any issue in the case and prejudicial. He argues this evidence, to which he objected, gave rise to an improper inference defendant had a propensity to commit offenses such as those for which he was being tried.

The evidence must be fairly limited to the issues on trial (*People v. Pickett* (1975), 34 Ill. App. 3d 590, 598-99, 340 N.E.2d 259); however, evidence is admissible unless there is some distinct ground for refusing it, and evidence is relevant if it tends to make a proposition

at issue either more or less probable (*People v. Grady* (1982), 107 Ill. App. 3d 970, 977, 438 N.E.2d 608, *appeal denied* (1982), 91 Ill. 2d 575). It is the trial judge's function to balance the probative value and prejudicial effect of offered evidence and his decision will not be reversed absent an abuse of discretion. (*People v. Adams* (1981), 102 Ill. App. 3d 1129, 1135, 430 N.E.2d 267.) Evidence which is otherwise relevant will not be excluded merely because it may prejudice the accused. *People v. Calderon* (1981), 98 Ill. App. 3d 657, 661, 424 N.E.2d 671, *appeal denied* (1981), 85 Ill. 2d 579.

Defendant argues as he did not deny being at the Hager home near the time when Kristin Voska and Suzanne Dowell saw him on the road his identity was not in issue in the case. He also notes that three of the Hager girls identified him in trial as the man who entered their home and asserts that as the State did not need the testimony of Voska and Dowell to establish his identity, it was irrelevant and cumulative.

In a pretrial hearing of defendant's motion *in limine* in which he sought to exclude the Voska-Dowell testimony, defendant proposed to stipulate to his identity and presence in the Hager home. The trial court denied the motion, correctly holding that the State was not required to accept a defendant's stipulation of fact, but could offer proof of each element of the offenses on trial. (See *People v. Christen* (1980), 82 Ill. App. 3d 192, 198, 402 N.E.2d 373; *People v. Kuntz* (1977), 52 Ill. App. 3d 804, 808, 368 N.E.2d 114, *appeal denied* (1978), 67 Ill. 2d 594.) Identity is always an issue in a criminal case, and the State cannot be required to anticipate whether a defendant will testify or what facts he may dispute if he testifies. The young witnesses who viewed defendant at the scene of the offenses saw him briefly under stressful circumstances, and only the victim viewed defendant from a short distance. The State was required to prove defendant's identity and presence at the scene, and the evidence to which he objects served to establish the reliability of defendant's in-court identification by the on-scene witnesses. See *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68; *People v. Hutchins* (1972), 9 Ill. App. 3d 447, 292 N.E.2d 494.

Defendant's conduct relative to the first two young girls was also relevant to prove he committed the offenses for which he was on trial. Evidence which tends to prove a fact in issue, even though it may show the accused committed another crime, or evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) While evidence may not be introduced solely to

show a defendant's propensity to crime, the State may offer testimony relating to events which are not themselves criminal offenses which go to motive and intent of defendant. See *People v. Dewey* (1969), 42 Ill. 2d 148, 157, 246 N.E.2d 232; *People v. Lehman* (1955), 5 Ill. 2d 337, 341, 125 N.E.2d 506; *People v. Pieper* (1951), 410 Ill. 15, 101 N.E.2d 109; *United States v. Serlin* (7th Cir. 1976), 538 F.2d 737.

Defendant testified he was at the Hager home simply to sell an automobile and, in our view, his conduct towards the first two young girls shortly before the offenses for which he was convicted was probative of his intent and motivation when he entered the Hager home. We conclude the trial court did not err in its admission of this evidence.

■ Defendant's final argument is that he was denied effective assistance of counsel when his trial attorney tendered and the court gave to the jury, over the objection of the State, an instruction defining the offense of battery. The State argued at the conference on instructions that defendant was not charged with battery and, further, that the tendered instruction was couched in terms of making "physical contact of an insulting or provoking nature with an individual" (Ill. Rev. Stat. 1981, ch. 38, par. 12—3(2)), rather than defining battery in terms of causing "bodily harm to an individual" as provided in section 12—3(1) of the battery statute. When the trial court agreed to give defendant's tendered instruction, the State then offered, and the court gave, instructions defining battery causing bodily harm. The court also requested that IPI Criminal No. 2.01 be tendered as a court's instruction by which it advised the jury that "defendant is charged with home invasion, which includes the offense of battery \*\*\*." The jury thereafter returned a general verdict finding defendant guilty of battery, together with its verdicts finding him guilty of home invasion and indecent liberties.

Defendant contends that because of the tendered instructions for battery premised upon physical contact of an insulting and provoking nature, the jury may have convicted defendant of home invasion even though it may have concluded he caused no injury to the victim. Defendant asserts his trial counsel was incompetent in submitting the battery instruction and defendant was prejudiced thereby requiring a new trial.

We do not agree. It is axiomatic that a defendant cannot complain of error in instructions to which he has acquiesced, induced or invited or which were given at his request; nor may he contend that lesser offenses for which he has tendered instructions and verdict forms were not lesser-included offenses of that charged. (*People v. Gallardo*

(1983), 112 Ill. App. 3d 764, 772-73, 445 N.E.2d 1213, *appeal denied* (1983), 94 Ill. 2d 554; *People v. Jeffrey* (1981), 94 Ill. App. 3d 455, 468, 418 N.E.2d 880, *appeal denied* (1981), 85 Ill. 2d 570; *People v. Mireles* (1979), 79 Ill. App. 3d 173, 199, 398 N.E.2d 150, *cert. denied* (1980), 449 U.S. 860, 66 L. Ed. 2d 76, 101 S. Ct. 163; *People v. Morgan* (1976), 40 Ill. App. 3d 711, 715, 352 N.E.2d 444, *cert. denied* (1977), 431 U.S. 930, 53 L. Ed. 2d 246, 97 S. Ct. 2635.) However, where the basis of defendant's challenge to instructions tendered by him goes to competency of counsel, he may raise the instruction as error. (*People v. Williams* (1975), 31 Ill. App. 3d 161, 165, 333 N.E.2d 655; *People v. Count* (1969), 106 Ill. App. 2d 258, 263, 246 N.E.2d 91.) For defendant to establish that his trial counsel was thus incompetent, he must demonstrate actual incompetence which resulted in substantial prejudice without which the outcome would have been different based on the circumstances of the particular case. *People v. Royse* (1983), 99 Ill. 2d 163, 168, 457 N.E.2d 1217; *People v. Carlson* (1980), 79 Ill. 2d 564, 584-85, 404 N.E.2d 233; *People v. Bliss* (1970), 44 Ill. 2d 363, 369, 255 N.E.2d 405.

A defendant was entitled to have the jury instructed as to the law applicable to any state of facts, if there is evidence which would support the instruction as viewed in its factual context. (*People v. McEvoy* (1975), 33 Ill. App. 3d 409, 413, 337 N.E.2d 437, *appeal denied* (1976), 62 Ill. 2d 591.) By offering the battery instruction, counsel's trial strategy was premised upon his argument defendant was guilty of a lesser offense, rather than those charged, and in closing argument counsel extensively advised the jury that as defendant's actions did not injure the complainant, he could not be convicted of home invasion. Submission of these instructions was clearly a deliberate tactic on the part of counsel to cause a compromise verdict and avoid a Class X conviction and does not demonstrate incompetence. See *People v. Pettit* (1983), 114 Ill. App. 3d 876, 449 N.E.2d 1044, *appeal allowed* (1983), 96 Ill. 2d 547; see also *People v. Stokes* (1974), 21 Ill. App. 3d 754, 316 N.E.2d 127.

Although the jury in this case was instructed that battery was a lesser-included offense of home invasion, we do not consider it could have been misled so as to find defendant guilty of that offense absent injury to the victim. The jury was separately and correctly instructed as to the elements of the offense of home invasion, including the requirement that defendant had injured the victim. The State in argument directed to that offense did not suggest that conduct by defendant which did not injure the girl could satisfy the proof requirements for that offense. It, instead, correctly argued that the requisite injury

was caused when defendant pressed the pillow over the victim's face so that she had difficulty breathing. As defendant notes, the State did in its closing argument point out defendant was also guilty of battery by both causing bodily harm to the victim and touching her in an insulting or provoking manner. It noted evidence of the latter form of battery was seen where defendant placed his hand at her crotch and sought to get inside of her shorts.

The question of whether defendant inflicted injury, as required under the home invasion statute, and bodily harm or contact of an insulting or provoking nature required for battery, were fact issues for determination by the jury. (See *People v. Green* (1977), 54 Ill. App. 3d 596, 370 N.E.2d 42; *People v. Hadley* (1974), 20 Ill. App. 3d 1072, 314 N.E.2d 3.) Defendant's trial counsel presented an able and vigorous defense on his behalf, arguing defendant could only be convicted of the misdemeanor battery offense as any contact with the victim did not cause injury. We do not consider the jury was misled and find it accurately considered the law and evidence before it. It is also apparent that evidence of defendant's guilt was substantial and, had the presently disputed instructions not been given, the verdict would have been the same. *People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 665, 382 N.E.2d 363.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.