(No. 61438.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARK A. SLOAN, Appellee.

*Opinion filed March 19, 1986.*

Neil F. Hartigan, Attorney General, and J. William Roberts, State's Attorney, both of Springfield (Jill Wine-Banks and Roma J. Stewart, Solicitors General, and Mark L. Rotert and Marcia L. Friedl, Assistant Attorneys General, of Chicago, and Robert J. Biderman and David E. Mannchen, of the State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel D. Yuhas and Jeffrey D. Foust, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Sangamon County, the defendant, Mark A. Sloan, was convicted of murder and home invasion and sentenced to 40 years' imprisonment. The appellate court, with one justice dissenting, reversed the conviction and remanded the cause for a new trial, concluding that the trial judge had erred in refusing the defendant's instructions on self-defense and voluntary manslaughter. (129 Ill. App. 3d 242.) We allowed the State's petition for leave to appeal (94 Ill. 2d R. 315(a)).

The evidence presented at trial was largely undisputed. Shortly after 2 a.m. on January 13, 1983, the defendant went to the home of a former girlfriend, Cynthia Johnson, and shot and killed her boyfriend, Richard Wilson, during an argument. The defendant was arrested soon after that. In a statement to the police, the defendant explained that he and Wilson had fought the previous week. Before setting out that night, the defendant had thought about the earlier fight, and he decided

to go to Johnson's house to see whether the victim was there and to "take care of the problems." With a sawed-off shotgun under his arm, the defendant knocked on Johnson's door for about 10 to 15 minutes and then pushed it open; according to the defendant, it was already damaged. The defendant found Wilson sitting alone on a bed in one of the bedrooms, and they argued. The defendant told police that when he displayed the gun, Wilson dared him to fire it. Wilson then jumped up and rushed forward, and the defendant fired the gun.

The defendant was with his current girlfriend, DeAnn Mottley, before he shot Wilson. According to Mottley, the defendant said that he was going to Johnson's house to see his child—Cynthia Johnson was the child's mother. The defendant did not appear to be agitated, and he did not mention his earlier fight with Wilson. Mottley also testified that after the previous fight, Wilson had told her that he would kill the defendant.

Cynthia Johnson and her roommate, Wanda Johnson, testified at trial. They both said that when the defendant arrived at the house he knocked on the door, demanding to see his child. The two women and the baby hid in one bedroom while Wilson stayed in the other. The defendant kicked the door in and shouted at Wilson, "Shut up, your time is going to come now." The defendant and Wilson continued to argue, and the gun went off. According to Cynthia, the defendant then shouted, "Cynthia, put my baby down because you're next. And Wanda, if you're in there, I got a bullet for you, too." The defendant fled as Cynthia entered the front room. When the police arrived at the scene they found the door partly open and the door casing on the floor.

The defendant testified. He said that when he went to Johnson's house he took the shotgun with him for protection, though he did not know whether Wilson would be there. The defendant testified that after knock-

ing on the front door for a period of time he pushed it open; he said that the door casing fell as he entered the residence, but he denied that he had kicked the door open. The defendant saw Wilson in one of the bedrooms, and he told Wilson that he was not there to argue and wanted only to see his child. The defendant testified that as he turned to go to another room, Wilson started charging toward him, and the defendant then brought the gun out. The defendant said that he was afraid and believed that Wilson was going to attack him; the room was dimly lighted, and the defendant could not tell whether Wilson had anything in his hands. Wilson dared the defendant to fire the gun, and the defendant stumbled and the gun went off accidentally. The defendant denied threatening the two women.

Defense counsel tendered jury instructions on self-defense (see Ill. Rev. Stat. 1983, ch. 38, par. 7—1) and on the "unreasonable belief" form of voluntary manslaughter (see Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b)), but both of them were refused. In declining to instruct the jury on voluntary manslaughter, the trial judge explained:

> "[I]n this case the evidence is that at 2:00 o'clock in the morning, the defendant by his own admission went to another's private home that was darkened, pounded on the door and asked for entrance and called out for 10 or 15 minutes. When no one responded, he knocked the door open, forced the door open, went into the darkened room. The evidence is that the victim had been lying on a bed in the darkened room, with only a television on to give it light, and for the defendant to say I ought to be entitled to a voluntary manslaughter instruction because the light was too bad and I didn't know if maybe he had a weapon, I find preposterous."

With respect to the instruction on self-defense, the trial judge believed that the victim was entitled to use force to repel the defendant's invasion of the premises and

that the defendant could not assert self-defense to that.

The State raises a number of contentions in support of the trial judge's refusal to instruct the jury on self-defense and voluntary manslaughter, and we agree that the defendant's use of force here was precluded by section 7—4(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 7—4(c)). Section 7—4, concerning the use of force by an aggressor, provides in part:

"The justification described in the preceding Sections of this Article is not available to a person who:

(a) Is attempting to commit, committing, or escaping after the commission of, a forcible felony; or

\* \* \*

(c) Otherwise initially provokes the use of force against himself, unless:

(1) Such force is so great that he reasonably believes that he is in imminent danger of death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

(2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force."

The defendant here clearly was the aggressor, and we conclude that Wilson's slight display of force, or resistance, was provoked by the defendant's own conduct. We disagree with the defendant's suggestion that a jury instruction on the question whether he provoked the use of force was warranted by his testimony that he told Wilson that he was there only to see his child. Armed with a sawed-off shotgun, the defendant went to the house of his former girlfriend at 2 o'clock in the morning, ostensibly to see his infant daughter. After knocking on the door for 10 to 15 minutes, the defendant pushed the

door open and entered the residence, and he found the victim on a bed in a bedroom. The defendant's armed and unauthorized entry of the residence at that hour in the morning belies his ostensibly peaceful purpose in making the visit. For this reason, too, we conclude that the trial judge correctly refused the defendant's instruction on voluntary manslaughter. The defendant's erroneous belief would not have justified the killing, under the provision governing here.

The defendant argues that the State has waived consideration of section 7—4 because that provision was not raised in the trial court as a reason for refusing the tendered instructions. We disagree. The trial judge refused to give both instructions, and on appeal the State could argue, in support of that decision, any reason having a basis in the record. In *People v. O'Neal* (1984), 104 Ill. 2d 399, which the defendant cites, the trial judge instructed the jury on self-defense but refused a tendered instruction on voluntary manslaughter. Contending that both instructions should have been refused, the State in *O'Neal* raised in this court an argument that it had not made previously, and the court found that the contention had been waived. In that case, though, the jury had been instructed on self-defense, and for that reason this court held that the defendant's tendered instruction on voluntary manslaughter also should have been given. In *O'Neal*, then, the trial court had determined the essential question—the availability of self-defense—adversely to the State. We do not interpret *O'Neal* as intending to alter the well-established rule that a prevailing party generally may raise, in support of a decision, arguments that were not made in the trial court. (See *People v. Keller* (1982), 93 Ill. 2d 432, 437-39; *Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 248.) The State's argument here is consistent with its position in the trial court, and the State did not acquiesce in contrary rulings made in the courts

below. Moreover, the new argument has been raised in a timely manner—besides asserting it here, the State, the prevailing party in the trial court, raised the argument in the appellate court in support of the trial court's favorable ruling. Therefore, we conclude that the State has not waived consideration of section 7—4 as a reason for refusing the instructions in question.

For the reasons stated, the judgment of the appellate court is reversed. Because the defendant raised other issues in the appellate court that were not decided there, the cause is remanded to that court for further proceedings.

*Reversed and remanded.*