THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDY S. FREEMAN, Defendant-Appellant.

Third District   No. 3—91—0680

Opinion filed September 16, 1992.—Rehearing denied October 20, 1992.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

Following a jury trial, the defendant, Andy S. Freeman, was convicted of home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—11(a)(2)). He was sentenced to 10 years' imprisonment. The defendant appeals his conviction.

At trial, the defendant and the victim, Darren Parrish, presented two different versions of what had happened. The defendant testified that he and Parrish were rivals for the affections of Carrie Smith. Although Smith lived with the defendant and had a child by him, she would occasionally leave to travel with Parrish. Additionally, Parrish would occasionally call the defendant's home and ask to talk to Smith.

On February 23, 1991, the defendant saw Parrish at a bar called J.J.'s. Parrish followed the defendant and indicated that he wanted to talk about Smith. The defendant told Parrish to leave or he would "knock his head off."

The defendant further testified that on the night of February 26, he again saw Parrish at J.J.'s. Parrish approached him three or four times and indicated that he wanted to talk, but each time the defendant would walk away. The defendant consumed approximately seven or eight beers and then left.

At approximately 3:50 a.m., the defendant arrived home. Smith accused him of cheating on her and stated that Parrish had stopped by to see her at around 3 a.m. The defendant was upset, so he decided to drive to Parrish's house to talk to him.

Once at Parrish's home, the defendant knocked on the door. Parrish asked who was there, but the defendant did not respond and instead knocked again. Parrish again asked who it was, but the defendant again refused to answer. Parrish opened the door and told the defendant, "Let me put my pants on."

Although Parrish did not give him permission to enter, the defendant stepped into the home because he was cold. He noticed Parrish reach under his television and pull out a knife. The defendant then punched Parrish on the side of the head. Parrish fell to his

knees, and the defendant grabbed him and hit him a couple more times. After taking the knife from Parrish and throwing it to the side, the defendant proceeded to flip up the covers on Parrish's couch because he had been told that Parrish owned a gun. Noticing that Parrish was trying to get up, the defendant "popped him again" and told him to stay on the floor.

The defendant then went into Parrish's bedroom, flipped up the mattress, and asked Parrish, "Where's that goddamn gun?" By that time, Parrish had wet his pants and was on the floor crying. The defendant left after not finding a gun.

While walking down the stairs outside Parrish's home, the defendant heard Parrish swearing and coming towards the door. The defendant then saw Parrish come out with a crowbar. Parrish swung the crowbar at him, but the defendant caught it with his hand. The two struggled for control of the bar and wound up back inside Parrish's home. Eventually the defendant got control of the crowbar and stood over Parrish, who was on the floor crying. The defendant used the crowbar to smash a hole in the floor to show Parrish the damage such an object could cause. While the defendant pulled the crowbar out of the floor, Parrish covered his face and repeatedly said, "Please don't kill me." After the defendant removed the crowbar from the floor, he left the house and took the crowbar with him. He subsequently threw the bar out on his way back home.

The defendant admitted that he did not need to go to the hospital following the incident. Additionally, he admitted that he did not report the incident to the police.

Parrish testified that on the night in question, he was at J.J.'s bar. He saw the defendant there, but did not speak to him. Parrish left the bar after he had a couple of beers.

On his way home, Parrish stopped at a gas station to call Smith. He told her that the defendant was with another woman. Additionally, he talked to her about getting back together. Following his conversation with her he went home, locked his door, and went to sleep.

At approximately 4:30 a.m., he was awakened by blows to his head. He saw the defendant hitting him, but he could not see what he was being hit with until he managed to get out to the living room, where the lights were on. He then saw that the defendant was hitting and stabbing him with a crowbar-like pipe that belonged to Parrish. The defendant told Parrish, "I'm going to kill you." Parrish begged for his life, and the defendant stopped beating him.

However, the defendant subsequently put a knife Parrish owned to Parrish's throat and threatened to kill him and hurt his parents if he went to the police. The defendant then left, taking the pipe with him.

After the defendant left, Parrish managed to get up, put on his clothes, and drive to his parents' house. Once there, the police were called and Parrish went to the hospital. At the hospital he was treated for a cut on his forehead; two black eyes; a swollen nose; a bloody lip; stab wounds to his side, leg, and ankle; and a large cut on his hand.

Police officer William Marion testified that on the morning in question he went to Parrish's home to investigate a home invasion. He saw Parrish's injuries and took photographs of them. These photographs were entered into evidence. He also photographed the damage to Parrish's apartment, which included a broken light, a smashed television, bloodstained couch cushions, holes in the floor, and a broken deadbolt latch. He then went to the defendant's residence to talk to him. The defendant told Officer Marion that he did not know what Marion was talking about. Officer Marion did not notice any injuries to the defendant at that time.

Carrie Smith testified that on the night in question, the defendant was upset after he came home from the bar. He went to Parrish's home and returned later that morning. Later that day, she noticed bruises on one of his hands. She also noted that when she helped Parrish move in September of 1990, his door was damaged but the deadbolt was not broken.

Larry Ziegenbein testified that he was a friend of the defendant. On the night in question, he was at J.J.'s bar with the defendant. Once that night, he saw the defendant stand next to Parrish. The defendant then walked away from Parrish. At some point that evening, Ziegenbein told Parrish that he should leave the defendant alone. Ziegenbein admitted that he was too intoxicated to recall much else.

Following all the testimony, a jury instruction conference was held. The court allowed the defendant's instructions on the lesser included offense of battery, which included as a proposition to be proved that the defendant was not justified in his actions. However, the trial court refused to give the defendant's justification instruction with respect to the home invasion. In denying the instruction, the court determined that self-defense was not applicable to home invasion.

The jury was instructed to return a verdict of either not guilty, guilty of battery, or guilty of home invasion. The jury found the defendant guilty of home invasion, and he was later sentenced to 10 years' imprisonment.

On appeal, the defendant contends that the trial court erred by failing to instruct the jury that in order to find the defendant guilty of home invasion, it had to find that the defendant was not justified in causing bodily harm. The defendant argues that although his entry was unauthorized, once he was in the apartment, he acted in self-defense. He suggests that the court recognized the viability of the self-defense claim when it allowed the battery instructions to require a showing that the defendant's actions were not justified.

A careful review of the record discloses that the trial court refused to allow the requested self-defense instructions on the charge of home invasion because, in its opinion, section 7—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 7—4) provided that self-defense was not a defense to home invasion.

We note that section 7—4 states the following concerning the use of force by an aggressor:

> "The justification described in the preceding Sections of this Article is not available to a person who:
>
> (a) Is attempting to commit, committing, or escaping after the commission of, a forcible felony; or
>
> * * *
>
> (c) Otherwise initially provokes the use of force against himself, unless:
>
> (1) Such force is so great that he reasonably believes that he is in imminent danger of death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or
>
> (2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force."
>
> Ill. Rev. Stat. 1991, ch. 38, par. 7—4.

There may be situations in which a defense of justifiable use of force by an aggressor is permissible as a defense in a home invasion. The language of section 7—4 on its face leaves open the possibility for such a defense. As this court stated in *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 1109, 412 N.E.2d 721 "[I]t is the unau-

thorized entry which is the mental state proscribed at the time of entry, and no other intent at the time of entry to commit some other criminal act is required." The intention to cause any injury to any person or persons within such dwelling place can arise subsequently to the unauthorized entry. It does seem to this court possible that situations could arise in which events subsequent to the unauthorized entry would occur which would justify the justifiable use of force as set forth in section 7—4. However, we are not called upon here to review all the possible factual situations that might arise in a hypothetical context. Rather, this court must deal with the facts that were presented in the trial of this case. Whether the trial judge was theoretically correct in stating that justifiable use of force could never be a defense in a home invasion case is irrelevant. The real question before this court is the correctness of the trial court's conclusion applied to the facts of this case, and not the validity of its rationale. (*People v. York* (1963), 29 Ill. 2d 68, 193 N.E.2d 773.) We hold that the trial court did not err in failing to provide the tendered justifiable use of force instruction in the instant case. Even if the defendant's version of the story was found to be credible, he was still the aggressor and his actions viewed in the light most favorable to him fell far short of complying with the requirements of section 7—4.

Here, the defendant admitted that he had threatened to knock the victim's head off. A couple days later, the victim visited the defendant's girlfriend and the defendant became upset. Despite the fact that it was 4 a.m., the defendant drove to the victim's home and knocked on his door. When the victim asked who was there, the defendant refused to identify himself. He then entered without authority. We find these actions belie the defendant's claim that his visit was for peaceful purposes. We further find that these actions were sufficient to establish that the defendant was the aggressor. See *People v. Sloan* (1986), 111 Ill. 2d 517, 490 N.E.2d 1260.

Even if the defendant subsequently felt threatened by the victim, he was still obligated under section 7—4 to exhaust every reasonable means of escape other than the use of force. When the defendant saw Parrish pull out the knife, he could have fled. Instead, he chose to remain and engage in a physical confrontation with Parrish. After he struck and disarmed Parrish, the defendant again had the opportunity to retreat. However, he remained in the home and searched for a gun. He also struck Parrish again. By the end of the night's confrontation, Parrish was begging for his life.

In light of the foregoing facts and the disproportionate injuries suffered by the victim as opposed to the defendant, it is clear that even if the defendant's testimony was believed, his actions failed to constitute self-defense in light of the limitations of section 7—4. (See *People v. Sloan* (1986), 111 Ill. 2d 517, 490 N.E.2d 1260; *People v. Davidson* (1987), 160 Ill. App. 3d 99, 514 N.E.2d 17.) Under these circumstances, we find that the defendant was not entitled to self-defense instructions regarding the home invasion.

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

GORMAN and McCUSKEY, JJ., concur.