**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted July 21, 2005[*]
Decided July 21, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-3649

|  |  |
|---|---|
| ANDRE THOMAS, | Appeal from the United States District Court for the Northern |
| *Petitioner-Appellant,* | District of Illinois, Eastern Division |
| *v.* | No. 03 C 7754 |
| NEDRA CHANDLER, | Matthew F. Kennelly, |
| *Respondent-Appellee.* | *Judge.* |

**O R D E R**

After a bench trial, Andre Thomas and two codefendants were convicted of first degree murder and sentenced to a term of 30 years' imprisonment.  Convinced that the state had not presented sufficient evidence to convict him and that his trial counsel had been ineffective, Thomas pursued a direct appeal and state post-conviction petition.  When these efforts failed, Thomas filed the present habeas corpus petition pursuant to 28 U.S.C. § 2254, arguing as relevant here that the evidence unequivocally demonstrated that he had shot the victim, Clifford Ray, in self defense and could not therefore be guilty of first degree murder and that his trial attorneys were ineffective for advising him not to testify and refusing to call a

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

potentially exculpatory witness. The district court denied Thomas's petition, holding that the state courts had correctly applied federal law in concluding that the evidence was sufficient to convict him of first degree murder and that counsel had not been ineffective. Thomas appeals, and we affirm.

We draw the facts of this case from the Illinois appellate court's resolution of Thomas's direct appeal, where we assume they were correctly stated. 28 U.S.C. § 2254(e)(1); *Ashford v. Gilmore*, 167 F.3d 1130, 1131 (7th Cir. 1999). In September 1995 Thomas, a governor of the Gangster Disciples, convened a meeting of some gang members at his home. The subject of this meeting was the failure of some members, Ray included, to pay their political fees in support of the organization. As a governor, Thomas was responsible for making sure the Disciples's laws and policies were honored; gang members who violated rules or disrespected gang leaders were subject to punishment in the form of "violations," which include fines, beatings, and even death. When Thomas asked Ray why he had not paid his fees, he responded that he and several other members had decided not to pay because they needed the money to take care of their children. Thomas's assistant, Anthony Adams, reprimanded Ray for his lack of respect, and Thomas himself left the room, returning a few minutes later with a .380 semiautomatic handgun. Adams then punched Ray on the right cheek and another gang member, Ronnie Sloan, hit him with a baseball bat. At this point, Ray drew a gun and several gang members fled the room.

None of the state's witnesses actually saw Ray being shot. One witness, Karrience Golden, observed Adams struggling with Ray for control of Ray's gun; during this battle the gun went off twice, injuring Golden and one other gang member. Another witness, Lashon Coleman, ran and hid in a closet when he saw Thomas with a gun. Coleman heard two shots followed in close succession by another two or three shots. When he emerged from the closet, he saw that Ray and two other gang members had been shot and that Thomas had left the room.

Thomas's defense consisted of the testimony of a police officer who stated that Golden had given him several different accounts of the shooting before arriving at the version he presented at trial. Thomas also submitted stipulations from both parties that Ray had twice previously been arrested for possession of a firearm, and a stipulation that another witness at the scene, Terrence Brown, had previously stated that Ray fired the gun wildly before he himself was shot. Thomas's attorneys convinced him not to testify, telling him that they believed the trial judge found the state's witnesses incredible, but would likely view his own testimony with even more skepticism. Moreover, they noted, if Thomas testified the prosecution would try to introduce more harmful evidence about his gang involvement. Emphasizing their years of experience with criminal trials, Thomas's attorneys told him that the state had not met its burden of proof and that he would be acquitted.

After brief closing arguments by both parties, the trial court found Thomas (and his two codefendants, Adams and Ronnie Sloan) guilty of first degree murder on an accountability theory. The court noted that, under Illinois law, a defendant can be held accountable for a crime he knowingly helps another person to commit. Because each of the defendants assisted in imposing "violations" on the victim, the court found, they were all guilty of his murder, without regard to who actually pulled the trigger.

In this appeal, we review the district court's factual findings for clear error and its legal rulings de novo. *Bintz v. Bertrand*, 403 F.3d 859, 865 (7th Cir. 2005). To qualify for habeas relief, Thomas must show that the state court proceedings adjudicating his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Bintz*, 403 F.3d at 865.

Thomas first argues that insufficient evidence supports his conviction for first degree murder. He submits that the evidence clearly demonstrates that the victim pulled a gun on him and that he shot him in self defense. When reviewing a challenge to the sufficiency of the evidence, courts look to see whether the evidence, viewed in the light most favorable to the prosecution, permits any reasonable trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As relevant here, Illinois defines first degree murder as a killing "without lawful justification" where the defendant "either intends to kill or do great bodily harm to that individual or another, or knows that [his] acts will cause death to that individual or another." 720 ILL. COMP. STAT. 5/9-1. If the defendant had an actual and reasonable belief that his actions were necessary to defend himself or another against the imminent use of unlawful force likely to cause death or great bodily harm, his actions are excused. 720 ILL. COMP. STAT. 5/7-1. A claim of self defense is not available, however, if the defendant initially provoked the use of force against himself, unless he can show that he exhausted every reasonable means to escape the imminent danger of great bodily harm or that he withdrew from physical contact with the victim and indicated a desire to terminate the use of force. 720 ILL. COMP. STAT. 5/7-4.

We cannot say that the state court's decision was contrary to or an unreasonable application of federal law. The state court correctly identified *Jackson* as governing Thomas's claim, and sufficient evidence supports Thomas's conviction. Thomas concedes that he shot Ray, and the evidence does not support a claim of self defense, because it is clear that Thomas was the initial aggressor in the conflict. Before Ray displayed a weapon or indeed made any gestures of aggression, Thomas had already brought out his own gun and two of his associates had physically assaulted Ray. Nor did Thomas make any attempt to retreat from Ray or

terminate the use of force.  Under these circumstances, Thomas was not entitled to claim self defense, *see People v. Sloan*, 490 N.E.2d 1260, 1262-63 (Ill. 1986), and the state courts were correct to conclude that his conviction was supported by sufficient evidence.

Thomas next argues that the state court unreasonably concluded that he received effective assistance of counsel.  He claims that his trial attorneys were ineffective because they advised him not to testify and did not call Dave Sloan (not to be confused with codefendant Ronnie Sloan) as a witness.  He argues that both he and Dave Sloan would have testified that Ray pulled out his gun and began shooting wildly before Thomas displayed his own weapon, and that this testimony would have aided his claim of self defense.  To establish that counsel was constitutionally ineffective, a defendant must demonstrate both that counsel's performance was deficient and that there is a reasonable probability that, had counsel acted appropriately, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 693-94 (1994).

The state court's conclusion that Thomas's attorneys performed adequately was not contrary to or an unreasonable application of federal law.  The state court correctly identified *Strickland* as governing Thomas's claim, and counsel did not perform deficiently.  An attorney is not obligated to call every witness the defendant proffers if there are strategic reasons for not doing so, *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000), even if the rejected witness is the defendant himself, *United States v. Dyer*, 784 F.2d 812, 817 (7th Cir. 1986).  Thomas's attorneys identified good strategic reasons for keeping him off the stand; given his gang history and prior inconsistent accounts of the shooting, his credibility may well have been badly hurt on cross-examination.  *See Rodriguez v. United States*, 286 F.3d 972, 983-84 (7th Cir. 2002).  The attorneys' alternate reason for suggesting that Thomas not testify—their belief that the state had not met its burden of proof—was similarly reasonable, even though this belief turned out to be incorrect. *See Rogers-Bey v. Lane*, 896 F.2d 279, 283 (7th Cir. 1990), *abrogation on other grounds recognized by Willis v. Aiken*, 8 F.3d 556, 563 (7th Cir. 1993).  The record also contains ample reason for rejecting the proffered testimony of Dave Sloan; Sloan was the brother of Thomas's codefendant and his affidavit mostly corroborates, rather than contradicts, the version of events put forth by the prosecution.  Accordingly, the state courts correctly concluded that Thomas's attorneys did not act ineffectively.

AFFIRMED.