THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARK BITNER, Defendant-Appellant.

Third District    No. 80-64

Opinion filed November 13, 1980.—Rehearing denied November 26, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant Mark Bitner was charged with intimidation, home invasion, and two counts of battery. After the intimidation charge was severed, the cause proceeded to a jury trial in the circuit court of Fulton County and defendant was convicted of home invasion and one count of battery. This appeal is from those convictions and defendant's concurrent sentences of six years and 364 days in the Department of Corrections.

The incident from which the charges at bar stem occurred during the early morning hours of September 4, 1979, at a house occupied by eight community college students in Canton, Illinois. The home had been purchased by the parents of two of the occupying students and the other six students were tenants. At the time of the incident, six students were in residence and one of the six, Mitch McNeil, was alone in the home's living room watching television.

McNeil testified that at approximately 12:10 a.m., he walked into a downstairs bedroom adjacent to the living room shared by two of his roommates, Derek Dierker and Pete Hoff. As they were conversing, McNeil heard loud talking, making him aware someone else was in the house. When he looked out of the bedroom, he saw defendant and three companions. McNeil testified that no one had knocked on the door or rung either of two doorbells, which he described as "very loud." He then walked into the living room and informed the intruders that there was no party and that everyone was in bed; however, he did not ask defendant to leave and obtained beers for the group because he "didn't want any trouble." McNeil later testified that defendant "scared me to death."

Other students indicated the defendant went to other rooms of the house and awoke the occupants with loud and obscene language demanding that there be a party. Without detailing all of the conduct of the defendant and his companions, as well as the threats and demands made,

we believe it is sufficient to say that as the result of the defendant's conduct the students assembled in the living room.

At this point, all 10 individuals were together in the living room. The residents testified to the defendant's tough demeanor, his smashing some cans, and breaking a bottle. One of defendant's companions left when all the beer had been consumed. Defendant then went into the kitchen and obtained some champagne. After "chugging" the champagne, he began to vomit over or behind the kitchen stove. Meehan, one of the student occupants, testified that he had seen defendant vomit and then turned away from the emesis and toward the television when defendant asked him at what was he staring.

All six residents testified that defendant then entered the living room and struck Meehan. While Meehan could not detail the attack, the other five witnesses stated defendant delivered a sharp blow with either his brace or his right elbow to Meehan's right eye. Meehan then fell over and was apparently unconscious for a moment. Defendant then said something to Burgett, another of the student occupants, and five witnesses testified that defendant then grabbed Burgett by the hair and administered another blow. The four residents who had not been attacked testified that defendant forced Burgett's face down as defendant kicked the victim's face with his knee. Burgett then fell to the floor. Defendant's two remaining companions then restrained him, and Myers and Hoff helped Meehan out the door.

At this point, all of the residents fled from the home to call an ambulance, the police, and to hide.

Defendant testified that he believed a party was being held at the residence and that "somebody" knocked on the door upon his group's arrival and he followed the group in. Defendant stated that someone greeted him by saying "Jenks, whatcha' doing?" and admitted attempting to get the residents to drink some beer by calling them "lightweights" but denied the use of profanity or threats of violence. While defendant admitted pushing Myers in the chest and striking Meehan with his elbow, he claimed he was verbally provoked and failed to remember ever going upstairs in the home or kneeing Burgett in the face. Defendant denied any threatening conversations thereafter.

On appeal, defendant raises 10, and by motion, two additional issues for our consideration, which we shall discuss in turn.

Defendant initially challenges the constitutionality of the home invasion provision, which provides in pertinent part:

> "Home Invasion. (a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he

or she knows or has reason to know that one or more persons is present and

* * *

(2) Intentionally causes any injury to any person or persons within such dwelling place." Ill. Rev. Stat. 1979, ch. 38, par. 12—11.

We find it unnecessary to discuss defendant's contentions that the provision is unconstitutional because these contentions have recently been decided by this court adversely to the position of the defendant in *People v. Robinson* (1980), 89 Ill. App. 3d 211, 411 N.E.2d 589.

■■ Defendant next raises four questions concerning the conduct of his trial. The first two of defendant's assignments of error are that the evidence failed to establish his guilt of home invasion beyond a reasonable doubt and that the jury was not properly instructed as to the elements of that offense. Defendant premises the former challenge on the basis that his entry into the dwelling was not unauthorized or that he was unaware it was unauthorized and that he lacked criminal intent at this time. Defendant's latter challenge is premised solely on the failure to instruct the jury that criminal intent was necessary at the time of entry. Without restating the evidence, we believe from the facts outlined above that the evidence was sufficient to show the defendant's entry was unauthorized, even though the fact was disputed by the defendant. Furthermore, it is the unauthorized entry which is the mental state proscribed at the time of entry, and no other intent at the time of entry to commit some other criminal act is required. Therefore, no evidence of any other such intent or instruction is required.

■■ Defendant's second two questions concerning the conduct of his trial involve evidentiary rulings. The first of these assignments of error is the trial court's failure to declare a mistrial when in response to the prosecution's inquiry as to why he followed defendant's orders, McNeil responded: "Because I've seen what Mark Bitner can do." The second assignment of error stems from Myers' statement that defendant at one point said: "Let's go get some pot out of the car." We are precluded from considering the former question as defendant has waived the issue by failing to preserve it in his post-trial motion *(People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856) and are similarly precluded from considering the latter question as defendant's objections during the relevant testimony were not based on grounds asserted on appeal. Specific objections to the admission of evidence waive all grounds not specified, and one may not raise on appeal a question which was not properly presented to the trial court. *People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292.

■■ ■ Defendant has moved to add two additional issues concerning

these evidentiary rulings, and the People have objected as the issues were not raised in his initial brief. While an issue cannot be raised for the first time in a reply brief (*e.g., People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058; *People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185; *People v. Taylor* (1970), 123 Ill. App. 2d 430, 258 N.E.2d 828), we believe a sense of fundamental fairness dictates that an appellant should be granted the opportunity to respond to an argument first raised in an appellee's initial brief. In the case at bar, the issue of waiver was first raised in the People's initial brief, and we believe defendant should be granted the opportunity to respond thereto. As defendant has raised the issues by motion in deference to the general rule, we grant his motion; however, we find that, under these circumstances, new issues, arising out of material in the appellee's brief may and should be included in the reply brief.

Defendant argues that if the aforementioned evidentiary questions have been waived, we should nonetheless consider them as plain error or as the result of the ineffective assistance of counsel. The People have filed no response to these contentions beyond their objection to the motion itself.

■■ Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) provides for review of plain error or defects affecting substantial rights although they were not brought to the attention of the trial court. The rule does not operate in the nature of a general saving clause. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) It permits a court of review to notice errors which deprive an accused of substantial means of enjoying a fair and impartial trial and, in criminal cases in which the evidence is closely balanced, to consider errors that have not been properly preserved. (*People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403.) Our review of the record herein does not indicate that the defendant was deprived of a fair and impartial trial nor does it indicate that the evidence was closely balanced. We therefore find no reason to depart from the general rule that issues not properly preserved for review are waived.

■■ The second argument raised by defendant's motion is that we should consider the evidentiary rulings as the result of the ineffective assistance of counsel. As defendant's counsel was privately retained, we cannot reverse his convictions because of the incompetency of counsel unless the representation was of such a low caliber as to amount to no representation at all or reduced the court proceedings to a farce or a sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Furthermore, in establishing a violation of his constitutional rights, a defendant must establish that he suffered a substantial prejudice from the manner in which his counsel conducted his defense. (*People v. Witherspoon* (1973), 55 Ill. 2d

18, 302 N.E.2d 3.) Our review of the totality of counsel's conduct at trial (*People v. Murphy*) does not indicate defendant's representation was a nullity nor a farce or sham. We furthermore fail to find that defendant was substantially prejudiced by the conduct of his defense counsel. Considering these circumstances, we decline to find ineffective assistance of counsel is present here.

Defendant next raises three questions regarding his sentence. He first contends the home-invasion statute's mandatory six-year sentence is unconstitutional as applied to him. Specifically, he contends the sentence is violative of article I, section 11 of the Illinois Constitution, which provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Absent a clear constitutional violation, as where a statutory penalty is so disproportionate to the offense that it shocks the moral sense of the community or is cruel or degrading, the legislative determination of a criminal penalty will not be interfered with, as such is within the legislative province. (*People v. Boucher* (1979), 75 Ill. App. 3d 322, 394 N.E.2d 60.) Considering the seriousness of the crime of home invasion, and the importance of security in the home, we cannot say that the moral sense of the community is offended by the six-year sentence.

■■ Defendant next contends that this court should reduce the degree of the offense at bar and remand this cause for resentencing on the reduced offense. Under the broad powers granted under Supreme Court Rule 615(b)(3) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(3)), we may reduce the degree of an offense, but we may do so only when lesser included offenses are involved. (*People v. Trinkle* (1976), 40 Ill. App. 3d 730, 353 N.E.2d 18, *aff'd* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.) Defendant's request that we reduce his home-invasion conviction to one of burglary or criminal trespass to land overlooks the fact that neither crime is a lesser included offense of home invasion. Burglary requires entry with intent to commit a felony or theft (Ill. Rev. Stat. 1977, ch. 38, par. 19—1(a)), while criminal trespass to land requires notice of forbidden entry (Ill. Rev. Stat. 1977, ch. 38, par. 21—3(a)). As neither of these elements was here established, we are precluded from granting defendant's request.

Defendant's third contention regarding his sentencing is that this cause should be remanded for resentencing on the battery conviction in the event the home invasion conviction is reversed. As we find no reason to reverse the latter conviction, we do not reach this question.

Defendant last contends that his battery conviction must be reversed as battery is a lesser included offense of home invasion. In Illinois, an included offense is established by proof of the same or less than all of the facts or a less culpable mental state than required for the charged offense.

(Ill. Rev. Stat. 1977, ch. 38, par. 2—9.) For an offense to be a lesser included offense, the greater offense must include every element of the lesser offense plus at least one additional element. *People v. Jones* (1979), 75 Ill. App. 3d 214, 393 N.E.2d 437; *People v. Thompson* (1977), 55 Ill. App. 3d 795, 371 N.E.2d 326; *People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197.

The statute under which the defendant was charged states that home invasion occurs when "(a) A person * * * without authority * * * knowingly enters the dwelling place of another when he * * * knows or has reason to know that one or more persons is present and * * * [i]ntentionally causes any injury to any person or persons within such dwelling place." (Ill. Rev. Stat. 1977, ch. 38, par. 12—11.) The battery statute provides:

> "(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (Ill. Rev. Stat. 1977, ch. 38, par. 12—3.)

The People contend that the elements of absence of legal justification and bodily harm are not included in the offense of home invasion, thus rendering battery incapable of being a lesser-included offense of that crime.

The People's contention that the absence of legal justification is not an included element of home invasion is well taken; however, lack of legal justification is not a necessary element of the crime of battery. (*Cf. People v. Worsham* (1975), 26 Ill. App. 3d 767, 326 N.E.2d 134; *People v. White* (1972), 7 Ill. App. 3d 1084, 288 N.E.2d 705; *People v. Hussey* (1972), 3 Ill. App. 3d 955, 279 N.E.2d 732, *aff'd sub nom. People v. Harvey* (1973), 53 Ill. 2d 585, 294 N.E.2d 269. But *cf. People v. Whelan* (1971), 132 Ill. App. 2d 2, 267 N.E.2d 364.) As noted by the court in *Hussey*, the idea expressed by the element is a negative rather than an integral part of the crime's definition. We therefore find that the presence of the element in the battery provision does not preclude that offense from being a lesser-included offense of home invasion.

■■ The People's next contention is that because the home-invasion statute speaks of injury while the battery statute speaks of bodily harm, battery is not a lesser-included offense of home invasion. We find no merit in this argument. To have committed a home invasion, defendant had to have caused an injury to a person or persons within the dwelling. While injury and bodily harm are not identical, it is clear that to cause an injury within the meaning of the home-invasion statute, one must cause bodily harm, thus committing a battery. Thus, whenever a person violates the home-invasion statute, he simultaneously commits a battery.

We therefore find that in the instant case, battery is a lesser-included offense of home invasion and is barred as a multiple conviction with a concurrent sentence. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

Accordingly, the judgment of the circuit court of Fulton County is affirmed as to the conviction of home invasion and reversed as to the conviction of battery.

Affirmed in part, reversed in part.

ALLOY, P. J., and STENGEL, J., concur.