No. 3--04--0742

_____

Filed April 19, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01--CF--1186 |
| SAMUEL E. WOODS, | ) ) | Honorable Jerelyn D. Maher, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the opinion of the court:
_____


In a bench trial, the defendant, Samuel E. Woods, was found
guilty of aggravated robbery (720 ILCS 5/18--5(a) (West 2000))
and home invasion (720 ILCS 5/12--11(a)(2) (West 2000)).  The
trial court sentenced him to extended terms of 20 and 40 years of
imprisonment for these offenses, respectively.  On appeal, the
defendant argues that the trial court erred by failing to remove
his leg shackles during three court proceedings and by allowing
one of his wrists to remain handcuffed during one of these
proceedings.  Additionally, he contends that the State failed to
prove beyond a reasonable doubt that he committed the offenses.
We affirm.

I. FACTS

A. Leg Shackles and Handcuffs

The bench trial took place on July 23 and October 17, 2003, and February 18, 2004.  At the July 23 proceeding, the following exchange took place among the court, defense counsel, and the court's deputy:

"[DEFENSE COUNSEL]: *** I would ask that Mr. Woods be unhandcuffed or in some fashion handcuffed differently so he can take notes during the trial, whatever methodology is appropriate on that.

THE COURT: Any problem with that, Officer?

THE DEPUTY: Usually we don't if they are in uniform, there is no jury trial, your Honor.  But it's up to you.

THE COURT: Do you have an alternative?

THE DEPUTY: That's it.

THE COURT: That's it.

[DEFENSE COUNSEL]: He is shackled, so it's not like--

THE COURT: What about legs?  Is he shackled by his legs?

THE DEPUTY: Uh-huh.

THE COURT: All right, take his cuffs off then."

At the October 17 proceeding, the following exchange took place among the court, defense counsel, and the deputy:

"[DEFENSE COUNSEL]: Judge, could we have Mr. Wood's [sic] hands in some way unsecured so he could take notes[?]

THE COURT: Does he have--is he shackled in some way?

THE COURT DEPUTY: Yes, Judge.

THE COURT: Okay. He can have his hands uncuffed."

At the February 18 proceeding, the following exchange took place between the court and defense counsel:

"[DEFENSE COUNSEL]: *** Judge, could I have one or both of his handcuffs removed for note-taking purpose[s] please?

THE COURT: You can have one."

### B. Aggravated Robbery

The defendant was charged with having committed aggravated robbery and home invasion in Peoria on the evening of December 8, 2001. Lynda Beckwith testified that she was a cashier at a gas station in Peoria that evening. During the trial, the court viewed an audio-video tape of the incident, which was recorded by the gas station's security camera and microphone.

In the tape, the defendant asked Beckwith how much a bag of peanuts cost. After Beckwith replied, the defendant brought the peanuts to the counter. The defendant gave money to Beckwith.

3

Beckwith opened the cash register, placed the defendant's money in the cash drawer, and got change out of the drawer.  While Beckwith was occupied with the cash register, the defendant opened his jacket with his right hand.  As Beckwith began to close the cash drawer, the defendant reached across the counter and placed his left hand on the drawer, preventing Beckwith from closing it.  The defendant raised his right hand above the level of his shoulder with his right index finger extended.  He then brought his right hand down to his waist and gestured to his waist with his right hand.  After the defendant's gesture, Beckwith immediately stepped back from the area of the counter and cash register and placed her hands behind her back.  Next, the defendant reached across the counter with his right hand and removed the paper currency from the cash drawer.  The defendant then exited the building through its front door.

Beckwith testified that after the defendant opened his jacket, she saw "something wooden" in the defendant's waistband and "presumed it was a gun."  She said, "So, I just stepped back and *** let him take the money."  Beckwith later identified the defendant as the robber both in an in-person lineup at the police station and in the courtroom during the trial.

After the defendant was arrested, he told police that the wooden object in his waistband was the end of a crutch.  He could not remember whether the piece of the crutch was all wood or was

4

wood covered with padding.  The defendant did not produce the piece of crutch for the police.  The police did not recover a wooden object during their investigation after the defendant's arrest.

## C. Home Invasion

A witness at the gas station provided police with a description of the car the defendant was driving, which was registered to the defendant's former girlfriend.  As the police followed the vehicle in their squad cars, the defendant stopped the car, exited, and fled on foot through the backyards of nearby residences.  The police pursued the defendant on foot.

Shonda Sledge said that on the evening in question, she was in her home, which is near the gas station.  Her husband Darrell and her children also were in the home.  While Shonda was in the bedroom, she noticed that there were several police officers in her backyard.

Next, Shonda heard the defendant open the screen door and kick open the French doors to the house.  Shonda met the defendant in the living room and told him to leave.  She then ran to the kitchen and picked up the phone with her left hand.  As Shonda was attempting to call the police, the defendant applied pressure to her left wrist with one of his hands, which caused her to drop the phone.  Regarding her wrist, Shonda said, "It was tender and real sore a couple of days afterwards."  After Shonda

5

dropped the phone, she ran out of the house through the kitchen's exterior door and into the backyard.

Darrell testified that during the incident, he retrieved his handgun from the bedroom. When he went into the kitchen, he saw the defendant and his wife struggling for control of the phone. After Shonda ran out of the house, Darrell told the defendant to leave. Instead of leaving, the defendant walked to the living room, and Darrell pursued him. In the living room, the defendant attempted to take the gun from Darrell.

While Shonda was in the backyard, she yelled to the police for help. She told the police that a man had broken into her home and was still there. The police then entered the residence and arrested the defendant.

At the conclusion of the trial, the court found the defendant guilty of the offenses. Defendant filed a motion for a new trial which did not raise an issue with respect to the shackles/handcuffs. The court denied the motion. The court sentenced the defendant, and he appealed.

## II. ANALYSIS

### A. Leg Shackles and Handcuffs

The defendant submits that the trial court erred by failing to remove his leg shackles during three court proceedings and by allowing only one of his handcuffs to be removed during one of these proceedings. The State argues that the defendant has

6

forfeited these issues by failing to raise them both in the trial court and in a posttrial motion. The defendant, therefore, asks us to analyze these issues for plain error.

Initially, we note that the defendant in this case invited two of the alleged errors that he has raised. A defendant cannot invite the trial court to adopt a certain procedure and then argue on appeal that the trial court's action was error. People v. Rossi, 52 Ill. 2d 13, 284 N.E.2d 275 (1972); People v. Carbona 27 Ill. App. 3d 988, 327 N.E.2d 546 (1975).

At the July 23 proceeding, defense counsel asked that the defendant's handcuffs be removed. The court's deputy asserted that the standard procedure was not to remove the handcuffs of a defendant in prison uniform. Defense counsel then began to suggest to the trial court that removing the defendant's handcuffs was permissible because the defendant was otherwise shackled. From the comments of the judge and the court deputy that followed defense counsel's suggestion, it is apparent that defense counsel was referring to leg shackles. Thus, defense counsel's request to remove the defendant's handcuffs depended upon the defendant's leg shackles remaining in place. The defendant cannot now challenge the fact that his legs were shackled at the July 23 proceeding when this instance of leg shackling was invited by defense counsel.

At the February 18 proceeding, defense counsel gave the trial court a choice between removing one or both of the defendant's handcuffs. The court chose to remove one of the handcuffs. Because defense counsel invited the court to remove only one of the defendant's handcuffs, the defendant cannot now complain that one of his hands remained cuffed. We next examine whether it was error for the trial court to fail to remove the defendant's leg shackles at the October 17 and February 18 proceedings.

Generally, an issue is forfeited on appeal if it was not raised in the trial court through both a contemporaneous objection and a written posttrial motion. People v. Enoch, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). In the instant case, the defendant did not object to remaining in leg shackles at the October 17 and February 18 proceedings. Additionally, the defendant did not argue the issue of leg shackling in a posttrial motion. Thus, the defendant has forfeited this issue on appeal. See Enoch, 122 Ill. 2d 176, 522 N.E.2d 1124.

However, the forfeiture rule does not apply if plain error occurred. 134 Ill. 2d R. 615(a). We can find plain error only where (1) the evidence was closely balanced, or (2) the error so prejudiced the defendant's case that it resulted in an unfair trial. People v. Allen, 222 Ill. 2d 340, 856 N.E.2d 349 (2006). We, therefore, analyze the defendant's claims regarding his leg

8

shackling at the October 17 and February 18 proceedings for plain error.

In the present case, the evidence concerning the offenses was not closely balanced, as we discuss below regarding the sufficiency of the evidence. Next, we consider whether the defendant's trial was unfair because he remained in leg shackles on October 17 and February 18.

In Allen, 222 Ill. 2d 340, 856 N.E.2d 349, the Illinois Supreme Court stated that even in the absence of a jury, the trial court must consider the factors listed in People v. Boose, 66 Ill. 2d 261, 362 N.E.2d 303 (1977), to determine if restraining the defendant is necessary. A trial court's failure to consider the Boose factors is a violation of a defendant's due process rights. Allen, 222 Ill. 2d 340, 856 N.E.2d 349. In the instant case, the record shows that the trial court did not consider the Boose factors. Therefore, the trial court committed due process errors by failing to hold Boose hearings before the October 17 and February 18 proceedings.

However, the Allen court also stated that the trial court's failure to conduct a Boose hearing does not amount to plain error unless the defendant can show that his restraint caused an unfair trial because it hindered his ability to assist his counsel, compromised his presumption of innocence, or demeaned the dignity of the proceedings. Allen, 222 Ill. 2d 340, 856 N.E.2d 349. In

9

the present case, the record does not show that the defendant's leg shackling on October 17 and February 18 hindered his ability to assist his attorney, compromised his presumption of innocence, or demeaned the dignity of the proceedings.

In summary, the evidence in this case was not closely balanced, and the defendant has not shown that his physical restraint resulted in an unfair trial. Therefore, we hold that the trial court did not commit plain error by allowing the defendant to remain in leg shackles during the October 17 and February 18 proceedings.

## B. Aggravated Robbery

The defendant contends that the State failed to prove beyond a reasonable doubt that he committed the elements of aggravated robbery. Specifically, he argues that the State failed to show that he indicated verbally or by his actions that he was armed with a firearm.

> "A person commits aggravated robbery when he ***
> takes property from the person or presence of another
> by *** threatening the imminent use of force while
> indicating verbally or by his *** actions to the victim
> that he *** is presently armed with a firearm or other
> dangerous weapon ***. This offense shall be applicable
> even though it is later determined that he *** had no
> firearm or other dangerous weapon *** when he ***

10

committed the robbery."  720 ILCS 5/18--5(a) (West 2000).

When we review a claim of insufficient evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  People v. Bishop, 218 Ill. 2d 232, 843 N.E.2d 365 (2006).

In this case, the wooden object that the defendant had in his waistband was neither recovered by the police nor produced by the defendant.  However, Beckwith said that she saw a wooden object in the defendant's waistband and presumed that it was a gun.  The defendant told the police that the wooden object in his waistband was part of a crutch.  Regardless of whether the object was an actual weapon, a rational trier of fact could have inferred that it appeared to be a dangerous weapon.  Many handguns have wood grips.

The videotape showed that the defendant made a gesture to his waist with his right hand.  A rational trier of fact could have concluded beyond a reasonable doubt that by this gesture, the defendant indicated that he was armed with a firearm or other dangerous weapon.

In summary, taking the evidence in the light most favorable to the prosecution, a rational trier of fact could have found

11

beyond a reasonable doubt that the State proved the elements of aggravated robbery.

## C. Home Invasion

The defendant asserts that the State failed to show that he committed the elements of home invasion beyond a reasonable doubt. Specifically, he contends that the State did not prove that he injured Shonda, under this court's holdings in People v Bitner, 89 Ill. App. 3d 1106, 412 N.E.2d 721 (1980), and People v. Boyer, 138 Ill. App. 3d 16, 485 N.E.2d 460 (1985). Both the Bitner and Boyer courts stated that in order to prove an "injury" under the home invasion statute, one must show that the victim suffered "bodily harm."

> "(a) A person *** commits home invasion when without authority he *** knowingly enters the dwelling place of another when he *** knows *** that one or more persons is present *** and
>
> ***
>
> (2) Intentionally causes an injury *** to any person *** within such dwelling place." 720 ILCS 5/12--11(a) (West 2000).

In People v. Mays, 91 Ill. 2d 251, 256, 437 N.E.2d 633, 635-36 (1982), the Illinois Supreme Court defined "bodily harm," in the context of criminal battery, as "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions,

12

whether temporary or permanent."  In the present case, the defendant submits that because Shonda did not suffer a laceration, bruise, or abrasion, she did not suffer "bodily harm," as required by Bitner and Boyer.

Although the Bitner and Boyer courts required a showing of "bodily harm" as an element of home invasion, more recent cases from other districts of the appellate court have looked to the plain language of the home invasion statute regarding the "injury" element of the offense.  See, e.g., People v. Ehrich, 165 Ill. App. 3d 1060, 519 N.E.2d 1137 (4th Dist. 1988); People v. Garrett, 281 Ill. App. 3d 535, 667 N.E.2d 130 (5th Dist. 1996).  The primary goal of statutory construction is to determine and give effect to the legislature's intent.  People v. Jones, 214 Ill. 2d 187, 824 N.E.2d 239 (2005).  The best indication of the legislature's intent is the plain language of the statute.  Jones, 214 Ill. 2d 187, 824 N.E.2d 239.  We will not read exceptions, limitations, or conditions into a statute that depart from its plain meaning.  People v. McClure, 218 Ill. 2d 375, 843 N.E.2d 308 (2006).

In the present case, the legislature used the term "injury" rather than the term "bodily harm" in the home invasion statute. We will not read an exception, limitation, or condition into the statute to say that "injury" means "bodily harm," contrary to our previous rulings in Bitner and Boyer.

13

Furthermore, even if we were to consider, arguendo, our supreme court's definition of "bodily harm" in Mays, the definition only requires "some sort of physical pain or damage to the body." The definition then provides examples "like lacerations, bruises or abrasions." The definition does not indicate that the examples are exclusive or exhaustive. Thus, although "lacerations, bruises or abrasions" are sufficient to prove that the victim suffered "physical pain or damage to the body," these conditions are not necessary to show "physical pain or damage to the body, *** whether temporary or permanent." Mays, 91 Ill. 2d at 256, 437 N.E.2d at 635-36.

In this case, the record indicates that Shonda suffered pain for a few days after the defendant applied pressure to her wrist. Clearly, Shonda was injured by the defendant's actions. Thus, we reject the defendant's assertion that the State failed to prove that he committed the "injury" element of home invasion. Taking the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the State also proved the elements of this offense.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Peoria County circuit court.

Affirmed.

CARTER, J., concurs.

14

JUSTICE McDADE, dissenting:

The majority has found that defendant cannot challenge the fact that his legs were shackled at the July 23 proceeding or that one of his hands remained cuffed at the February 18 proceeding, and that the trial court did not commit plain error by allowing defendant to remain in leg shackles during the October 17 and February 18 proceedings because the record does not show that the shackling on October 17 and February 18 hindered defendant's ability to assist his attorney, compromised his presumption of innocence, or demeaned the dignity of the proceedings. I disagree with the majority's conclusion that the trial court did not commit plain error when it, as the majority admits, committed due process errors by failing to hold *Boose* hearings before the October 17 and February 18 proceedings. Slip order at 8. Therefore, I respectfully dissent.

I agree with the majority that the supreme court's decision in *Allen* controls the disposition of this appeal. The basis for my disagreement lies in my belief that *Allen* actually requires reversal of the judgment of the circuit court of Peoria County rather than affirmance. I think a summary of my argument, that will be set out in greater detail below, would be helpful.

SUMMARY OF ARGUMENT

Our supreme court has held that (1) "*In the absence of exceptional circumstances,* an accused has the right to stand

15

trial with the appearance, dignity and self-respect of an innocent and free person" and (2) "[i]t *jeopardizes the presumption's [of innocence] value and protection and demeans our justice* for an accused *without clear cause* to be required to stand in a courtroom in manacles or other restraints while he is being judged." (Emphasis added.) *In re Staley*, 67 Ill. 2d 33, 37, 364 N.E.2d 72, 73 (1977). The *Allen* court concluded, citing *Staley*: "Thus, even when there is no jury, *any unnecessary restraint is impermissible because it hinders the defendant's ability to assist his counsel, runs afoul of the presumption of innocence, and demeans both the defendant and the proceedings.*" (Emphasis added.) *Allen,* 222 Ill. 2d 340, 347, 856 N.E.2d 349, 353. Thus, trying defendant in "unnecessary" restraints is, by definition, plain error.

Although these are the same reasons cited by the supreme court in mandating a hearing to determine whether there are legitimate reasons for restraining the defendant during his trial (*People v. Boose,* 66 Ill. 2d 261, 265-66, 362 N.E. 2d 305 (1977)), the court decided in *Allen* that the mere failure to have that hearing is not "plain error." Therefore, without an objection by the defendant to the restraints and a showing that the failure to hold the *Boose* hearing undermined his ability to assist in his defense, jeopardized the presumption of innocence

16

and demeaned our system of justice, a forfeiture of this due process right occurs.

To avoid the inadvertent nullification of case law that retains the approval of the supreme court and remains good and valid law of this state, we should utilize the *presumption* present in those earlier cases that without a determination of special circumstances, a defendant who is restrained during his/her trial has been "unnecessarily restrained." Thus, we would have to find "plain error" by operation of law.

ANALYSIS

The supreme court has stated unequivocally that "[i]n the absence of exceptional circumstances," presumably as determined by a *Boose* hearing, "an accused has the right to stand trial with the appearance, dignity and self-respect of an innocent and free person." *Staley*, 67 Ill. 2d at 37, 364 N.E.2d at 73. The supreme court has further stated that it "*demeans our justice* for an accused without clear cause to be required to stand in a courtroom in manacles or other restraints while he is being judged." (Emphasis added.) *Staley*, 67 Ill. 2d at 37, 364 N.E.2d at 73. With those clearly-stated principles in mind, I turn to what constitutes plain error in cases where the evidence is not closely balanced but where a defendant, contrary to his rights, is tried in shackles without a finding on the record of

17

exceptional circumstances to justify depriving him of those rights.

In *Allen*, the supreme court discussed the second prong of the plain error test, relying on its holding in *People v. Herron*, 215 Ill. 2d 167, 830 N.E.2d 467 (2005). In *Herron*, the court stated as follows:

> "In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] *Prejudice to the defendant is presumed because of the importance of the right involved, 'regardless of the strength of the evidence.'* [Citation.] In both instances, the burden of persuasion remains with the defendant. [Citation.]" (Emphasis added.) *Herron*, 215 Ill. 2d at 186-87, 830 N.E.2d at 479-80.

Thus, it seems, the second prong of the plain error doctrine embodies a two-part test. First there must have been an error at trial. Second, that error must be one that a) affects the fairness of the defendant's trial and b) challenges the integrity of the judicial process. The *Allen* court found that "while

18

defendant herein has proven a due process violation which amounted to error by showing that he was required to wear an electronic stun belt at trial without the court having first determined that it was necessary, defendant has failed to persuade this court 'that the error was so serious that it affected the fairness of [his] trial and challenged the integrity of the judicial process.'" *Allen*, slip op. at 10, quoting *Herron*, 215 Ill. 2d at 187, 830 N.E.2d at 479-80.

I agree with the majority's finding that the evidence in this case is not closely balanced. Therefore, if we are to find plain error, it would be under the second prong of the plain error rule. The failure to conduct the *Boose* hearing is error. See *Allen*, slip op. at 10. More so, "a trial court's failure to examine the necessity of requiring a defendant to wear restraints at trial is a due process violation." *Allen*, slip op. at 14. *Herron*, with which the *Allen* court obviously agrees, tells us that prejudice on account of this violation is presumed. We now know that a due process violation that prejudices defendant is not enough to satisfy the second prong. What we do not know is what exactly a) affects the fairness of a defendant's trial and b) challenges the integrity of the judicial process--if not, in either case, the prejudicial due process violation resulting from the failure to conduct the "requisite [mandatory] hearing." But, although the *Allen* court did say that this showing was

19

insufficient to prove "that [defendant's] presumption of innocence, ability to assist his counsel, or the dignity of the proceedings was compromised"  *Allen*, slip op. at 10), it also said:.

> "Any unnecessary restraint is impermissible because it *hinders the defendant's ability to assist his counsel, runs afoul of the presumption of innocence, and demeans both the defendant and the proceedings*."
> (Emphasis added.)  *Allen*, slip op. at 4, citing *Staley*, 67 Ill. 2d at 36-37, 364 N.E.2d at 73.

The only reasonable conclusion is that "plain error" as defined by *Allen* in this context occurs not from the failure to hold the *Boose* hearing but rather from a showing that the restraints are unnecessary.  I also note with particularity the court's reference to *any* unnecessary restraint, precluding any argument in this case that removing defendant's handcuffs sufficed to permit him to assist his counsel while both legs remained shackled.

The problem, of course, is how to determine that the restraints were unnecessary when there was no hearing and were no findings.  Although it appears that, without the hearing, this is an impossible showing for the defendant to make, I think there *is*

20

an answer – one that lies in the presumption behind the analysis for when a defendant may be shackled during trial.

If we were to begin with the premise that shackling is in all cases permissible, but a defendant may request a hearing to determine whether they may be removed, then a failure to conduct the hearing would not be plain error. This is true because under this premise, shackling--if in all cases permissible unless proved otherwise--could not have the effects on the trial listed above. Otherwise we would not permit this to be the default condition in the courts.

In reality, however, the law is to the contrary. Instead, we begin with the premise that a defendant may *never* be shackled during trial. See *Boose*, 66 Ill. 2d at 265-66, 362 N.E.2d at 305[1]. If, and only if, a court, after a hearing, determines in a particular case that shackles are required on account of one or more specific, demonstrable risks, may they be used. See *Boose*, 66 Ill. 2d 261, 266, 362 N.E.2d at 305 ("A defendant *may* be shackled *when* there is reason to believe that he may try to escape or that he may pose a threat to the safety of people in the courtroom or if it is necessary to maintain order during the

---

[1] "Most of the courts that have considered the question have held that an accused should never be placed in restraints in the presence of the jury 'unless there is a showing of a manifest need for such restraints.' [Citations.] The ABA Standards relating to jury trials provide: 'Defendants * * * should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order.' [Citation.]"

trial") (emphases added); *Deck v. Missouri*, 544 U.S. 622, 629, 161 L. Ed. 2d 953, 963, 125 S. Ct. 2007, 2012 (2005) ("[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial").

Under this premise, the one established by both our supreme court and that of the United States, the failure to conduct the hearing, *i.e.*, to permit unnecessary restraints--since necessity may only be determined after a *Boose* hearing -- must be plain error because the presence of the shackles *presumptively* hinders the defendant's ability to assist his counsel, runs afoul of the presumption of innocence, and demeans both the defendant and the proceedings. See *Allen*, slip op. at 4, citing *Staley*, 67 Ill. 2d at 36-37, 364 N.E.2d at 73. We could only *not* find plain error by examination of the *Boose* factors after the hearing and a determination that the restraints were necessary. If the hearing to determine whether the restraints were necessary never took place, we cannot *not* find plain error.

Because the restraints are presumptively impermissible, we may only logically begin with the premise that the restraints are unnecessary. I must conclude, as did the *Allen* court, that if the restraints are unnecessary, their presence hinders the defendant's ability to assist his counsel, runs afoul of the

22

presumption of innocence, and demeans both the defendant and the proceedings. However, the only way to determine whether the restraint was unnecessary or not is to have the court's assessment of the *Boose* factors on the record. It necessarily follows that in the absence of that assessment, plain error must attach. Otherwise, the error--unnecessary restraint since there has been no determination of necessity--would go uncorrected in every case.

While this reading may appear at first blush to be in conflict with the holding in *Allen*, I believe it is fully consistent with the supreme court's analysis. While the *Allen* court held that the trial court's failure to conduct a *Boose* hearing -- standing alone -- does not amount to plain error unless the defendant can show that his restraint caused an unfair trial, application of the presumptions found in *Herron* and *Staley* and confirmed in *Allen* show that the failure to conduct the hearing *necessarily* results in the "unnecessary restraint" that does constitute "plain error." I do not believe that the supreme court meant *Allen* to be interpreted as holding that shackling, absent a *Boose* hearing, *never* constitutes plain error. We are therefore left to determine for ourselves what does constitute plain error in these cases based on both the language and the spirit of the supreme court's opinions. I have attempted to do so faithfully here and conclude that the trial court's failure to

23

conduct a *Boose* hearing resulted in a presumption of the unnecessary restraint that the supreme court has found to be plain error.  Accordingly, I would reverse the judgment of the circuit court of Peoria County and remand for further proceedings.