# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Gardner*, 2013 IL App (2d) 110598

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL C. GARDNER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0598 |
| Filed | January 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for home invasion, the trial court's dismissal of defendant's postconviction petition alleging that his counsel was ineffective in failing to call a witness to refute the victim's claim that she was injured was upheld, since an injury need not be visible to sustain a conviction of home invasion, there was no factual basis for defendant's claim that he would have been convicted of only criminal trespass if the witness had been called, and the evidence of the victim's injuries was sufficient to sustain the conviction for home invasion. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 07-CF-4322; the Hon. Gary V. Pumilia, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal | Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, and Peter A. Carusona and Andrew J. Boyd, both of State Appellate Defender's Office, of Ottowa, for appellant.

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justice Hutchinson concurred in the judgment and opinion.
Justice Schostok specially concurred, with opinion.

## OPINION

¶ 1      Defendant, Michael C. Gardner, was found guilty of home invasion (720 ILCS 5/12-11(a)(2) (West 2006)), after a jury trial. He was sentenced to 20 years' imprisonment. Defendant filed a direct appeal, arguing that the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). This court affirmed the judgment of the trial court. *People v. Gardner*, No. 2-09-0429 (2010) (unpublished order under Supreme Court Rule 23). Defendant filed a *pro se* postconviction petition on March 2, 2011, pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). The trial court dismissed the petition as frivolous and patently without merit. Defendant appeals, arguing that his petition was improperly dismissed at the first stage where it contained the gist of a constitutional claim, specifically that counsel failed to call a witness to refute the victim's injuries, a necessary element of home invasion. According to defendant, had the witness been called to refute the injury evidence, he would have been guilty of only the lesser included offense of criminal trespass to a residence. We affirm.

¶ 2                      I. BACKGROUND

¶ 3      On June 2, 2008, defendant's trial on the home invasion charge commenced. The victim, Sharon James, 65 years old at the time of trial, testified that she lived in a home on 10th Street in Rockford with her dog, Barney. Around 10:30 p.m. on November 7, 2007, James took Barney out, and while outside she saw a man in a black hoodie, defendant, on a bicycle in the alley. Defendant pulled over and parked in front of James's car. He jumped off and started coming toward James's gate. James told defendant to get away from her gate and that her dog was not friendly. Defendant said he knew her dog and pulled his hoodie down. James could see defendant's face because he was standing under a streetlight. Defendant told her

that he used to mow her lawn when he lived next door. James remembered him and began to talk to him. Defendant then opened her gate and came in to talk to her dog. James continued to talk to defendant. Defendant then asked James if she had any jobs for him right now. James said she did not have anything for him to do this late in the evening. He then asked for a glass of water. James said she would bring him water and went inside to retrieve the water. James denied ever inviting defendant into her home.

¶ 4      James testified that defendant tried to push his foot and leg through her door as she was trying to close it behind her. She put her hands up to his chest and pushed him, stating "get out, get out, get out." James tried to keep her arm in the door to prevent getting locked into the house with defendant but he pulled her arm out and reached behind to lock the door. Defendant grabbed James's neck. His arm was around her neck, and his fingers were around her throat. James testified that she was horrified. Defendant told her to "hug him" and that he had a gun. James did not feel a gun and told him that he did not have a gun. She smelled alcohol on defendant. He then loosened his grip, and James stood up, grabbed a gallon bottle of water nearby, and pushed it into defendant's chest. She told him "here's your water, now get out." James ran to the front of the house. Halfway through the living room, defendant grabbed James again. She hit him with a bottle of spray cleanser that was on the coffee table. Defendant grabbed her by the shoulders. James started switching her lights on and off to signal for help. Defendant grabbed her fingers and pressed them back. James managed to open the front door and run out. Defendant was behind her and grabbed her arm again. James managed to break loose and hop the fence to get help from her neighbor. Defendant took off in a different direction. James then went back to her home and called police.

¶ 5      Regarding her injuries, James testified that she sought medical attention because the back of her neck was sore, her fingers were bruised, and her arm was sore. She had to take pain medication for the physical pain and anxiety medication for the emotional trauma. Her blood pressure was also elevated from the anxiety, and she was given medication for that as well.

¶ 6      Rockford police officer Daniel Watton testified that he arrived at James's home, and James provided a description of the incident and defendant. He left and found defendant at a nearby gas station. Defendant agreed to go with Watton to James's home to rule him out as a suspect in a home invasion. Defendant appeared intoxicated as he had a strong odor of alcohol, had slurred speech, and was swaying. James identified defendant, and Watton placed defendant under arrest. On cross-examination, Watton admitted that he did not notice any physical injuries on James when he spoke with her.

¶ 7      Defendant testified that on November 7, 2007, around 9:30 p.m., he was moving his ex-girlfriend into her new apartment. He later went to a liquor store with his nephew around 10 p.m. on bicycles. Later, defendant left his nephew and rode his bike toward 10th Street to visit some friends. He rode down the alley where James was with her dog. He began to talk to her and asked her for any jobs. She said she did not have any work for him. James then told defendant that he needed to go home because she thought he was drunk. Defendant touched her shoulder and said he was okay but James got scared and shoved him away from her door. Defendant got on his bike and left. He denied threatening James with a gun or going inside her home. He denied choking her or grabbing her hand or fingers. On cross-examination, defendant admitted that he was not invited into James's home. He admitted that

he might have asked her for water.

¶ 8 The jury was instructed on both home invasion and the lesser included offense of criminal trespass to a residence. In the end, the jury found defendant guilty of home invasion.

¶ 9 On March 2, 2011, after his direct appeal alleging a Rule 431(b) violation was rejected by this court, defendant filed a *pro se* postconviction petition, alleging: (1) ineffective assistance of trial counsel; (2) "prejudicial information" by Watton; (3) prosecutorial misconduct for failing to turn over evidence of James's injuries; (4) the court's abuse of discretion in admonishing the jury to disregard a witness's mentioning a prior burglary incident; (5) the State's failure to prove its case beyond a reasonable doubt; (6) insufficient deliberation by a tainted jury; and (7) ineffective assistance of appellate counsel. In defendant's ineffective-assistance-of-trial-counsel argument, he stated that trial counsel failed to file motions to suppress evidence and quash his arrest, failed to object to the victim's testimony regarding her injuries, failed to call Elizabeth Gardner, defendant's mother, as a witness to testify that she saw the victim the next day and did not observe any injuries on the victim's arm, and failed to consult with defendant about having a bench trial. As to appellate counsel, defendant claimed that counsel failed to argue that anything was wrong with his trial.

¶ 10 Defendant attached to his petition a signed letter from Elizabeth, dated December 7, 2010. The letter states that Elizabeth met with James on November 8, 2007, one day after the crime, at James's home. The letter states that "she had no injuries to her at this time." Elizabeth stated that the victim told her she called police because she was scared and aggravated. Elizabeth stated that she reported this to trial counsel and told him she would testify at trial, but she never heard from him until after the trial. The letter was not notarized.

¶ 11 On June 3, 2011, the trial court determined the following: (1) the claims of ineffective assistance of trial counsel could have been raised on direct appeal and thus were forfeited but also were otherwise frivolous and without merit; (2) the letter from Elizabeth was conclusory and unsubstantiated and thus not calling her as a witness failed to satisfy the requirements set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); (3) the claims regarding a bench trial and prosecutorial misconduct could have been raised and thus were forfeited; (4) the claim that the court abused its discretion in admonishing the jury to disregard certain evidence was forfeited and otherwise frivolous; (5) defendant's insufficiency-of-the-evidence argument was forfeited; (6) the tainted-jury claim was addressed on direct appeal and barred by *res judicata*; and (7) the claim of ineffective assistance of appellate counsel failed to meet either prong of *Strickland* as counsel raised all appropriate issues on direct appeal.

¶ 12 Defendant appealed the trial court order dismissing his petition at the first stage, arguing that he raised the gist of a constitutional claim that trial counsel was ineffective for failing to call Elizabeth as a witness to refute that James had injuries. Defendant argues that the essential difference between the home invasion charge and the lesser included criminal trespass charge was whether he intentionally caused injury to James. Thus, he argues, the failure to call Elizabeth to refute that element prejudiced him, causing his conviction on the greater offense.

¶ 13                                    II. ANALYSIS

¶ 14    Summary dismissal of a postconviction petition at the first stage is reviewed *de novo*.
*People v. Brown*, 236 Ill. 2d 175, 184 (2010). We first address the State's argument that
defendant's petition was properly dismissed because it lacked the proper verification required
by section 122-1(b) of the Act. 725 ILCS 5/122-1(b) (West 2010). Section 122-1(b) provides
that the "proceeding shall be commenced by filing *** a petition *** verified by affidavit."
*Id.* We disagree wi1th the State. This court has recently held that an invalid affidavit is not
a basis for a first-stage dismissal. *People v. Turner*, 2012 IL App (2d) 100819, ¶ 46 ("Just
as a petition can have merit despite its untimeliness [citation], so can a petition that is merely
unverified [citation]."). Therefore, lack of proper verification is not a valid ground for this
court to affirm the summary dismissal of defendant's petition.

¶ 15    The State next argues that defendant's petition was properly dismissed because it lacked
proper supporting documentation as required under section 122-2 of the Act (725 ILCS
5/122-2 (West 2010)). Specifically, the State argues that Elizabeth's letter was not notarized.
The State argues that, despite the decisions finding an unnotarized petition an insufficient
basis for summary dismissal, defendant was required to submit a properly notarized affidavit
from Elizabeth to support his petition. Because defendant did not attach a notarized letter,
the State argues, his petition was unsupported and was properly dismissed.

¶ 16    Section 122-2 of the Act provides that a postconviction petition shall have "affidavits,
records, or other evidence supporting its allegations" attached to it or state why such
documentation is not attached. 725 ILCS 5/122-2 (West 2010). The parties raise *People v.
Wilborn*, 2011 IL App (1st) 092802, ¶ 68, a First District case, which rejected the State's
argument that the trial court properly dismissed a petition at the first stage because it was
supported by an unnotarized statement from a witness who would have provided potentially
exculpatory testimony. In so doing, the *Wilborn* court failed to distinguish between the
affidavit requirements in sections 122-1(b) and 122-2 and simply relied on *People v.
Henderson*, 2011 IL App (1st) 090923, ¶ 36, which held that a lack of verification under
section 122-1(b) was not a valid basis for summary dismissal. The *Wilborn* court extended
that reasoning to an unnotarized statement by a witness submitted to support the defendant's
allegations in his petition. However, the supreme court in *People v. Collins*, 202 Ill. 2d 59,
66-67 (2002), stated that the failure to support a petition pursuant to section 122-2 alone
justified summary dismissal. *Collins* further acknowledged distinctive purposes for the
verification requirement in section 122-1(b) and the requirement of section 122-2 to have
" 'affidavits, records, or other evidence *supporting its allegations*.' " (Emphasis in original.)
*Id.* at 67 (quoting 725 ILCS 5/122-2 (West 2000)). The court stated that the defendant's
sworn verification pursuant to section 122-1(b) could not satisfy the requirement of section
122-2 to attach supporting documentation. *Id.* The court stated that the verification required
in section 122-1(b) serves to confirm that the defendant's allegations are brought truthfully
and in good faith while the supporting documentation required in section 122-2 serves to
show that the defendant's allegations can be independently corroborated. *Id.*

¶ 17    Thus, we agree with the State that the affidavit requirements found in sections 122-1(b)
and 122-2 are wholly distinctive and should be construed independently as they serve
independent purposes. Although a petition may not be summarily dismissed for violating

-5-

section 122-1(b), it may be for violating section 122-2. Because Elizabeth Gardner's letter was not a valid affidavit (see *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 496 (2002)), defendant arguably did not comply with section 122-2. See *People v. Barcik*, 365 Ill. App. 3d 183, 190-91 (2006).

¶ 18 In any event, we review defendant's argument that he otherwise raised the gist of a constitutional claim where he claimed that trial counsel failed to call Elizabeth to refute that James had any injuries from the home invasion. At the first stage of postconviction proceedings, the defendant must set forth only the gist of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The threshold is low because most petitions are drafted by defendants with little legal knowledge or training. *Id.* The low threshold, however, does not mean that the defendant is excused from providing any factual detail to support the alleged constitutional violation. *Id.* at 10. During the first stage, the court must determine whether the petition is frivolous or patently without merit. *Id.* A petition is frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Id.* at 12. A claim of ineffective assistance of counsel is reviewed under the test established in *Strickland*, which requires the defendant to show that counsel's performance was deficient and that prejudice resulted from that deficient performance. *People v. Brown*, 236 Ill. 2d 175, 185 (2010).

¶ 19 Defendant was convicted of home invasion, which, as charged, required proof that he intentionally caused any injury to any person inside the dwelling. See 720 ILCS 5/12-11(a)(2) (West 2006). Here, Elizabeth's letter stated that she did not observe any injuries on James when she saw her the day after the crime. This does not contradict any of the evidence at trial. At trial, Watton testified that he did not see any injuries on James when he arrived at her house to investigate. While no visible injuries may have been present, James testified that she had received medical care for the pain and bruising in her neck, arm, and fingers and for the emotional trauma that caused her to suffer from high blood pressure and anxiety. Proof of psychological injury satisfies the injury element of section 12-11(a)(2). *People v. Hudson*, 228 Ill. 2d 181, 194, 199 (2008) (also noting that expert testimony is not always necessary to establish psychological injury where facts, such as facts of the present case, can lead a jury to reasonably conclude that the offense caused psychological injury). Further, the injury requirement does not require *visible* injury, such as lacerations or bruising, and testimony to some sort of physical pain or damage to the body is sufficient. *People v. Woods*, 373 Ill. App. 3d 171, 179 (2007) (finding physical harm existed where victim testified that she suffered pain after the defendant applied pressure to her body). Therefore, there is no factual basis to support defendant's claim that he would have been guilty only of criminal trespass had Elizabeth been called to testify according to her letter. Likewise, there is no legal basis to support defendant's claim that counsel was ineffective for failing to call Elizabeth to testify, as defendant cannot establish that her testimony would likely have changed the outcome of the trial. Even if failing to call Elizabeth was deficient, which we do not believe it was, defendant cannot satisfy the prejudice prong of *Strickland* where there was sufficient evidence of James's injuries submitted at trial.

¶ 20                                    III. CONCLUSION

¶ 21        For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 22        Affirmed.

¶ 23        JUSTICE SCHOSTOK, specially concurring.

¶ 24        I agree with the decision to affirm the judgment of the circuit court. I write separately, however, because I disagree with the majority's decision to rely on *dicta* in *Turner* rather than on *People v. Carr*, 407 Ill. App. 3d 513, 515 (2011), and *People v. McCoy*, 2011 IL App (2d) 100424. Under *Carr* and *McCoy*, an alternate basis to affirm the circuit court's decision is that the defendant's petition was properly dismissed because it lacked the proper affidavit required by section 122-1(b) of the Act (725 ILCS 5/122-1(b) (West 2010)).

¶ 25        In *Carr*, the *pro se* postconviction petition alleged that the defendant pleaded guilty as a result of ineffective assistance of trial counsel. He attached an affidavit that was not notarized. The circuit court dismissed the petition at the first stage, and the defendant appealed. Citing the general rule that "[a] trial court properly dismisses a postconviction petition where the petition does not comply with the requirements of the Act," we affirmed the first-stage dismissal because the defendant's noncompliance with section 122-1(b) was a basis for denying relief under the Act. *Carr*, 407 Ill. App. 3d at 515-16. However, we found an alternative reason for affirming the dismissal, based on the petition's failure to " 'set forth the respects in which petitioner's constitutional rights were violated.' " *Id.* at 516 (quoting 725 ILCS 5/122-2 (West 2010)).

¶ 26        *McCoy*, 2011 IL App (2d) 100424, followed *Carr*. In that case, the circuit court dismissed the postconviction petition at the first stage, concluding that the petition failed to state the gist of a claim of ineffective assistance of counsel. The defendant appealed, and the State argued that the petition was not properly verified and that dismissal was therefore appropriate. Specifically relying on *Carr*, we agreed with the State and affirmed the dismissal, holding that "[t]he lack of notarization of defendant's verification is a basis to affirm the petition's dismissal." *Id.* ¶ 10.

¶ 27        In *Turner*, this court again examined the dismissal of a postconviction petition, but in the context of the *second stage* of postconviction proceedings and whether the State had forfeited the argument that the defendant's noncompliance with the Act's verification requirement supported the circuit court's dismissal. The *Turner* court held that the State had forfeited any challenge to the defective document. *Turner*, 2012 IL App (2d) 100819, ¶ 15. The *Turner* court's conclusion was rooted in the notion that an invalid affidavit is a nonjurisdictional procedural defect that the State must raise or forfeit at the second stage of postconviction proceedings. *Id.* ¶ 46. In so ruling, the *Turner* court noted that its decision was consistent with other districts' case law holding that an invalid affidavit is not a basis for a first-stage dismissal. *Id.*

¶ 28        *Carr* and *McCoy* are both consistent with our supreme court's decision in *People v. Boclair*, 202 Ill. 2d 89 (2002). In *Boclair*, the supreme court emphasized that a petition could

be dismissed at the first stage only if it is "frivolous or *** patently without merit." *Id.* at 101. Thus, to dismiss a postconviction petition at the first stage on a procedural ground, such as untimeliness, would be improper. *Id.* However, whether a defendant's postconviction petition is verified by an affidavit goes to the very heart of whether his allegations are frivolous or patently without merit. The purpose of requiring an affidavit pursuant to section 122-1(b) is to "confirm[ ] that the allegations are brought truthfully and in good faith." *People v. Collins*, 202 Ill. 2d 59, 67 (2002). If the allegations are not verified by an affidavit, the logical inference is that the allegations are neither truthful nor brought in good faith. Allegations that are untruthful or not brought in good faith are frivolous and patently without merit. Thus, where a defendant's petition is not verified by a section 122-1(b) affidavit, the circuit court may properly dismiss the petition on that basis.

¶ 29    *Carr* and *McCoy* are also not inconsistent with our supreme court's decision in *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). In *Coleman*, the supreme court stated that a circuit court should take as true the allegations that a defendant makes in his petition. *Id.* In that case, as the supreme court did not comment on the defendant's section 122-1(b) affidavit, it can be inferred that the affidavit complied with the Act. Thus, in context, *Coleman* provides that, where a defendant files a proper section 122-1(b) affidavit swearing that his allegations are true, the circuit court should in fact take those allegations as true. Here, as the defendant did not file a proper section 122-1(b) affidavit, the circuit court was not required to take the defendant's allegations as true.

¶ 30    *Turner* and other cases that have rejected *Carr* and *McCoy* are based on the premise that the affidavit requirement of section 122-1(b) is nothing more than a procedural requirement or a "technicality." See *People v. Stephens*, 2012 IL App (1st) 110296, ¶ 17; *People v. Parker*, 2012 IL App (1st) 101809, ¶¶ 74-77; *Turner*, 2012 IL App (2d) 100819, ¶ 31; *People v. Henderson*, 2011 IL App (1st) 090923, ¶ 35; *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 72; *People v. Terry*, 2012 IL App (4th) 100205, ¶ 3. The analysis in those cases is flawed for at least two reasons. First, those cases render the section 122-1(b) affidavit requirement surplusage. This runs afoul of the well-established principle of statutory construction that requires a statute to be interpreted such that none of its parts are rendered mere surplusage. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440-41 (2010). Second, by eviscerating the requirement that a defendant verify that his allegations are not fabricated, those cases essentially allow a defendant to allege anything that guarantees that his petition will proceed to the second stage under the Act. In other words, under that case law, a circuit court cannot consider whether the defendant is willing to verify that his allegations are true until the second stage of the proceedings. This thwarts the intent of the legislature, as petitions that it intended for dismissal at the first stage–those that are frivolous or patently without merit when only the allegations grounded in truth are considered–are advanced to the second stage.

¶ 31    Accordingly, as *Carr* and *McCoy* are better reasoned and more consistent with supreme court precedent and the purposes of the Act than *Turner*, this court should continue to adhere to *Carr* and *McCoy*.